Emmett Murray
HOLLOWAY, Appellant,

v.

The STATE of Texas, Appellee.

No. 68925.

Court of Criminal Appeals of Texas,
En Banc.

Oct. 18, 1989.

Clifton L. Holmes, Longview, for appellant.

Carter Beckworth, Dist. Atty., and R. Clement Dunn, First Asst. Dist. Atty., Longview, Robert Huttash, State's Atty., Austin, for the State.

## ON REMAND FROM THE SUPREME COURT OF THE UNITED STATES

McCORMICK, Presiding Judge.

Appellant, Emmett Murray Holloway, was convicted of capital murder and the death penalty was assessed. This Court affirmed the conviction holding, inter alia, that appellant's constitutional rights had not been denied when police officers procured inculpatory statements from him after he had been appointed counsel. We specifically held that appellant's Fifth, Sixth and Fourteenth Amendment rights to counsel had not been violated. *Holloway v. State*, 691 S.W.2d 608, 614–15 (Tex.Cr. App.1984).

Appellant challenged our holding in the Supreme Court of the United States. That Court summarily granted appellant's petition for writ of certiorari, vacated the judgment of this Court and remanded the case back to us to consider appellant's allegations in light of *Michigan v. Jackson*, 475 U.S. 625, 106 S.Ct. 1404, 89 L.Ed.2d 631 (1986), and *Moran v. Burbine*, 475 U.S. 412, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986). See *Holloway v. Texas*, 475 U.S. 1105, 106 S.Ct. 1508, 89 L.Ed.2d 908 (1986). We now reverse.

Appellant shot and killed a Longview police officer as the officer attempted to arrest appellant for aggravated robbery. After a high speed chase, appellant was subsequently arrested in the early morning hours of November 23, 1977, in Gilmer. While there, appellant was taken before a magistrate and given the warnings per Article 15.17, V.A.C.C.P. Later in the day, he was transferred to a Longview county jail. Again he was taken before a magistrate and given the same warnings. On that same day, appellant was indicted for the capital murder of the police officer.

Around two-thirty p.m., an attorney, Bob Moore, was appointed by Judge Adkinson to represent appellant. Moore learned of this appointment through Gregg County Assistant District Attorney, Alvin Khoury, who telephoned Moore to inform him. Moore tried to telephone Judge Adkinson to refuse the appointment but was unable to reach the judge. He then went to the Longview jail. While at the jail, Moore saw Frank Odam, a Gregg County District Attorney's Office investigator. Moore told Odam that he was appellant's counsel. Moore was allowed to talk with appellant and after telling him not to submit to any questioning, the attorney left town for the Thanksgiving holidays.

On November 24, 1977, Thanksgiving Day, appellant was interviewed by two investigators from the Longview Police Department, Mike Maxey and Travis Puckett. After he was given his *Miranda* warnings, appellant stated that he did not want an attorney and that he understood his rights. Appellant then made inculpatory statements which were used against him at his trial.

At trial, appellant objected to the State's use of the confession asserting that it had been obtained in violation of his Sixth Amendment right to counsel.[1] The State has responded to appellant's renewed Sixth Amendment claim and the Supreme Court's remand order. The State asserts that (1) *Jackson* is inapplicable because in this case appellant never invoked his right to counsel and, (2) *Burbine*'s holding that a client's right to counsel is personal and cannot be invoked by a defendant's attorney must lead this Court to conclude that appellant's confession was not obtained in violation of any right to counsel. By inference, the State wishes that we find appellant has waived any right to counsel afforded him by the Constitution and, as such, the subsequent confession was not the product of any constitutional violation. We agree *Jackson* is inapplicable to the situation before us but find that the State has misread the *Burbine* opinion. For the following

reasons based upon appellant's Sixth Amendment claim, we will reverse the conviction.

## I.

### *Michigan v. Jackson*

In *Miranda v. Arizona,* 384 U.S. 436, 471–473, 86 S.Ct. 1602, 1626–27, 16 L.Ed.2d 694 (1966), the Supreme Court determined that in certain pretrial settings, the Fifth Amendment privilege against compulsory self-incrimination requires a protective shield against the State and concluded that legal assistance should be integral to this shield. See *Michigan v. Tucker,* 417 U.S. 433, 443–444, 94 S.Ct. 2357, 2363, 41 L.Ed.2d 182 (1974). The Supreme Court had determined in *Miranda* that if an interrogation continues without the presence of an attorney and a statement is taken, a burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to counsel. *Miranda,* 384 U.S. at 475, 86 S.Ct. at 1628.

Fifteen years after *Miranda,* in *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), the Supreme Court considered the ramifications of a Fifth Amendment invocation. Believing it "inconsistent with *Miranda* and its progeny for the authorities at their insistence, to interrogate a suspect in custody if he has clearly asserted his right to counsel," the *Edwards* Court concluded that after such an assertion, interrogation must cease and may begin again only if "counsel has been made available ... [or] the accused himself initiates further communication, exchanges, or conversations with the police." 451 U.S. at 484–485, 101 S.Ct. at 1884–85. According to the *Edwards'* doctrine, if suspects who have invoked their *Miranda* right to counsel initiate further communication and waive their Fifth Amendment rights, then resumption of interrogation without counsel is constitutional. If, however, subsequent interrogation is initiated

---

1. Appellant also claimed that his Fifth Amendment rights had been violated. Our original opinion in this case addressed only Fifth Amendment concerns, resolving the issues adversely to appellant's position. *Holloway,* 691 S.W.2d at 614.

by law enforcement, no waiver of counsel (no matter how apparently knowing and voluntary) is valid.

Subsequent to *Edwards*, the Supreme Court decided *Michigan v. Jackson*, 475 U.S. 625, 106 S.Ct. 1404, 89 L.Ed.2d 631 (1986). There, the Court extended *Edwards* per se exclusionary rule into a Sixth Amendment context, specifically holding:

"Edwards is grounded in the understanding that the assertion of the right to counsel is a significant event and that additional safeguards are necessary when the accused asks for counsel. We conclude that the assertion is no less significant, and the need for additional safeguards no less clear, when the request for counsel is made at an arraignment and when the basis for the claim is the Sixth Amendment. We thus hold that, if police interrogation after a defendant's assertion, at an arraignment or similar proceeding, of his right to counsel, any waiver of the defendant's right to counsel for that police-initiated interrogation is invalid.

"Although the Edwards decision itself rested on the Fifth Amendment and concerned a request for counsel made during custodial interrogation, the Michigan Supreme Court correctly perceived that the reasoning of that case applies with even greater force to [Sixth Amendment] cases." *Jackson*, 475 U.S. at 636, 106 S.Ct. at 1411.

Respondent Jackson had explicitly requested counsel, thereby expressing a desire to deal with authorities only through counsel. *Jackson*'s ban on police-initiated interrogation, therefore, was based not on the mere existence of the right to counsel but upon the accused's actual invocation of that right. In the case before us, however, appellant never requested counsel. Nevertheless, he asks the we extend the holding in *Jackson* to the situation before us. We decline to do so.

■ A similar request to extend *Edwards*, and thus its progeny, *Jackson*, so as to preclude contact with an accused in a postindictment custodial interrogation con-

text, was made in *Patterson v. Illinois*, 487 U.S. 285, 108 S.Ct. 2389, 101 L.Ed.2d 261 (1988). There, the Supreme Court held:

"At bottom, petitioner's theory cannot be squared with our holding in *Edwards*, the case he relies on for support. *Edwards* rested on the view that once 'an accused ... has expressed his desire to deal with police only through counsel' he should 'not [be] subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communications.' *Edwards*, supra [451 U.S.], at 484–485 [101 S.Ct. at 1884–85]; cf. also *Michigan v. Mosley*, 423 U.S. 96, 104 n. 10 [96 S.Ct. 321, 326 n. 10, 46 L.Ed.2d 313] (1975). Preserving the integrity of an accused's choice to communicate with the police only through counsel is the essence of *Edwards* and its progeny—not barring an accused from making an *initial* election as to whether he will face the State's officers during questioning with the aid of counsel, or go it alone. If an accused 'knowingly and intelligently' pursues the latter course, we see no reason why the uncounseled statements he then makes must be excluded at his trial." *Patterson*, 108 S.Ct. at 2394 (emphasis in the original).

In short, *Edwards* and *Jackson* are concerned with providing an accused or suspect—not the attorney—with the means by which he may effectuate a decision to not deal with authorities alone. Invocation of counsel is therefore essential to bar further police contact with a suspect in the Fifth Amendment context or an accused in the Sixth Amendment context. Here, appellant never requested counsel's presence during the police interview or at anytime before that interview, therefore, as the State asserts, *Jackson* is inapplicable.

## II.

### *Moran v. Burbine*

■ Although we agree with the State that the rationale of *Jackson* is inapplicable, this finding does not necessarily lead us to the conclusion that because appellant never requested counsel his waiver of coun-

sel was valid.[2] While *Jackson* extended Fifth Amendment anticompulsion principles into a Sixth Amendment context, principles concerning the *waiver* of a Fifth Amendment right to counsel do not automatically apply to the Sixth Amendment.[3]

In this case, we must answer the question: was appellant, who had been indicted and who had been appointed counsel, capable of waiving his Sixth Amendment right to counsel before he submitted to questioning? The Supreme Court has never addressed the question that is now before us. In *Moran v. Burbine*, 475 U.S. 412, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986), however, the Court was faced with deciding whether an unindicted defendant, whose attorney tried to stop the police from interrogating his client, was capable of waiving his right to an attorney. The Court held that the authorities' failure to inform the suspect that his retained counsel was trying to reach him, and misinforming counsel that the suspect would not be interviewed without the presence of counsel, did not vitiate the suspect's ensuing waiver of his right to counsel after he had been properly advised of this right under *Miranda*. Although the Court found no Fifth Amendment violation, the Justices opined that had the Sixth Amendment been applicable, the situation would require a different analysis. Justice O'Connor, writing for the majority, determined that:

**2.** As stated previously, appellant was informed of his right to remain silent, of his right to an attorney, and he was made aware of the State's intentions to use any statement against him to secure a conviction. In *Burbine*, the Supreme Court concluded that "[o]nce it is determined that a suspect's decision not to rely on his rights was uncoerced, that he at all times knew he could stand mute and request a lawyer, and that he was aware of the State's intention to use his statements to secure a conviction, the analysis is complete *and the waiver is valid as a matter of law.*" 475 U.S. at 422–423 [106 S.Ct. at 1141] (emphasis added and footnote omitted). Thus, appellant who was given his *Miranda* warnings, indicated that he understood those warnings, and who, nonetheless, submitted to interrogation, did so having validly waived Fifth Amendment counsel.

**3.** It is beyond dispute that appellant, when he was interviewed by authorities after he had

"[W]e readily agree that once the [Sixth Amendment right to counsel] *has* attached, it follows that the police may not interfere with the efforts of a defendant's attorney to act as a 'medium between the suspect and the State' during the interrogation. *Burbine*, 475 U.S. at 428 [106 S.Ct. at 1144] (emphasis in the original), quoting *Maine v. Moulton*, 474 U.S. 159, 176, 106 S.Ct. 477 [487], 88 L.Ed.2d 481 (1985).

*Burbine*'s admonishment was recently repeated in *Patterson v. Illinois*, 487 U.S. 285, 108 S.Ct. 2389, 101 L.Ed.2d 261 (1988): "Once an accused has a lawyer, *a distinct set of constitutional safeguards* aimed at preserving the sanctity of the attorney-client relationship takes effect." 108 S.Ct. at 2393 n. 3 (emphasis added), again citing *Maine v. Moulton*, 474 U.S. 159, 176, 106 S.Ct. 477 [487], 88 L.Ed.2d 481 (1985). Thus, we are here to decide what is meant by "a distinct set of constitutional safeguards" that should be employed in this case where appellant has been formally charged and has an attorney to represent him. Our analysis begins by comparing the Fifth Amendment entitlement to counsel with the Sixth Amendment right to counsel and how waiver is effectuated under each.

■ The Sixth Amendment to the Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for

been indicted, enjoyed a Sixth Amendment right to counsel. The Sixth Amendment's guarantee of counsel's assistance includes the right to counsel at postindictment interrogations. The return of an indictment signals "the initiation of adversary judicial proceedings and thus the attachment of Sixth Amendment's guarantee of counsel's assistance." *United States v. Gouveia*, 467 U.S. 180, 187, 104 S.Ct. 2292, 2297, 81 L.Ed.2d 146 (1984). Thereafter, governmental efforts to elicit information from the accused represent a "critical stage" and the Sixth Amendment applies. *Michigan v. Jackson*, 475 U.S. 625, 632, 106 S.Ct. 1404, 1408, 89 L.Ed.2d 631 (1986); *Maine v. Moulton*, 474 U.S. 159, 176, 106 S.Ct. 477, 487, 88 L.Ed.2d 481 (1985); *United States v. Henry*, 447 U.S. 264, 270, 100 S.Ct. 2183, 2186, 65 L.Ed.2d 115 (1980); *Massiah v. United States*, 377 U.S. 201, 205, 84 S.Ct. 1199, 1202, 12 L.Ed.2d 246 (1964).

his defense." As discussed above, the Sixth Amendment is not the only source of counsel protection. Implicit in the Fifth Amendment protection against compulsory self-incrimination is an entitlement to have counsel present during custodial interrogations by police. Within the Fifth Amendment's simple provision that "[n]o person ... shall be compelled to be a witness against himself," U.S. Const. Amend. V, the Supreme Court discovered an entitlement to legal counsel. In *Miranda v. Arizona,* 384 U.S. 436, 471–473, 86 S.Ct. 1602, 1626–27, 16 L.Ed.2d 694 (1966), the Supreme Court determined that in certain pretrial settings, the privilege against compulsory self-incrimination requires a protective shield against the State and concluded that legal assistance should be essential to this shield. See *Michigan v. Tucker,* 417 U.S. 433, 443–444, 94 S.Ct. 2357, 2363, 41 L.Ed.2d 182 (1974).

■ The role that *Miranda* counsel plays, however, is different than that of the role of Sixth Amendment counsel. *Miranda* counsel acts as a buffer against state agents capable of amassing resources to extract confessions from unwilling suspects. Fifth Amendment counsel's primary function, therefore, is to provide a means and opportunity to prevent undue pressure to confess guilt; that is, the *promise* of legal assistance is intended to counter compulsion thus assuring that information surrendered is the product of an unfettered choice to confess guilt. *Miranda,* 384 U.S. at 470, 86 S.Ct. at 1625; *Berkemer v. McCarty,* 468 U.S. 420, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984).

■ Crucial to *Miranda's* Fifth Amendment protections is a scheme of warnings designed to warn a suspect of his constitutional entitlements. Admonishments concerning the right to remain silent, the risks of confessing, and the entitlement to legal counsel, are grounded on anticompulsion purposes—their objectives cannot be, for example, the promotion of rational decisionmaking. The Fifth Amendment bars only compulsory self-incrimination; it does not bar unwise confessions. See, e.g., *Connecticut v. Barrett,* 479 U.S. 523, 107 S.Ct. 828, 93 L.Ed.2d 920 (1987) (defendant's mistaken beliefs that investigating officers could not use oral statements—as opposed to written statements—against him held not to vitiate waiver of Fifth Amendment rights). *Miranda* presupposes that information concerning the opportunity to consult with counsel protects against compulsion and safeguards the right to remain silent.[4] Telling a suspect that counsel is available enables that suspect to avoid pressures to confess by providing an effective escape if he or she so desires and, as such, waiver of Fifth Amendment entitlements can be had by the decision of the suspect alone. That is, promise of counsel is waivable because in the Fifth Amendment context counsel's role is nothing more than an assurance that if the suspect wants counsel, counsel will be made available. See *Burbine,* 475 U.S. at 433 n. 4, 106 S.Ct. at 1147 n. 4 (privilege against self-incrimination is "personal ... [and] can only be invoked by the individual whose testimony is being compelled"); *Michigan v. Mosley,* 423 U.S. 96, 104 n. 10, 96 S.Ct. 321, 326 n. 10, 46 L.Ed.2d 313 (1975) ("the interrogation must cease until an attorney is present only if the individual states he wants an attorney"). See also *Dunn v. State,* 696 S.W.2d 561, 567–568 (Tex.Cr.App.1985). See generally Tomkovicz, *Standards for Invocation and Waiv-*

---

**4.** The *Miranda* opinion recognized "several subsidiary functions" that counsel's presence may serve, i.e., assurance of trustworthy confessions, reduction of the likelihood of police coercion, and assistance in guaranteeing that testimony given in court is accurate. See 384 U.S. at 470, 86 S.Ct. at 1625. See also *Fare v. Michael C.,* 442 U.S. 707, 719, 99 S.Ct. 2560, 2568, 61 L.Ed.2d 197 (1979). Some of those "subsidiary functions" are inseparable from the basic anticompulsion function of Fifth Amendment counsel. Additional functions of counsel recognized in *Miranda* and not concerning anticompulsion are unjustified under the Fifth Amendment. As stated in *Moran v. Burbine,* prevention of compulsion is "Miranda's mission and its only source of legitimacy." 475 U.S. at 425, 106 S.Ct. at 1143. Any ancillary effects that counsel may have in a Fifth Amendment situation should not be allowed to confuse that Amendment's analysis with that of a Sixth Amendment analysis. See generally Tomkovicz, *Standards for Invocation and Waiver of Counsel in Confession Contexts,* 71 Iowa L.Rev. 975, 994 (1986).

*er of Counsel in Confession Contexts*, 71 Iowa L.Rev. 975, 1020 n. 166 (1986).

■ Unlike the Fifth Amendment, the Sixth Amendment guarantees more than an entitlement to counsel upon invocation. Our adversary system is central to the administration of criminal justice. Parity between participants is critical to prevent unfair and unjust outcomes that would be tainted by one side's superiority. The criminal defendant is less capable of coping with "the system" than his or her governmental opponent, see *Gideon v. Wainwright*, 372 U.S. 335, 344, 83 S.Ct. 792, 796, 9 L.Ed.2d 799 (1963), and, as such, the Sixth Amendment's guarantee of counsel has been recognized as "indispensable to the fair administration of our adversarial system of criminal justice." *Moulton*, 474 U.S. at 168–169, 106 S.Ct. at 483. Designed to remedy any imbalance in this adversary system, the Sixth Amendment promises that an "accused"[5] is entitled to "defense" counsel "in all criminal prosecutions." U.S. Const. Amend. VI. As stated by the Supreme Court: "The Sixth Amendment recognizes the right to the assistance of counsel because it envisions counsel's playing a role that is critical to the ability of the adversarial system to produce just results." *Strickland v. Washington*, 466 U.S. 668, 685, 104 S.Ct. 2052, 2063, 80 L.Ed.2d 674 (1984). In short, in our adver-

sarial system of criminal justice, counsel is essential to fairness.[6]

■ Although the Sixth Amendment speaks in terms of "criminal prosecutions" —implying that counsel is to be afforded only in the trial setting—the Court has included within its ambit certain pretrial stages as well. See, e.g., *Gilbert v. California*, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967) (eyewitness identification procedure). Extending Sixth Amendment counsel to certain pretrial "critical stages" was based upon concerns that equalization at trial could prove to be an empty gesture if the government could take advantage of an accused in the earlier phases of postindictment investigations. See *Moulton*, 474 U.S. at 170, 106 S.Ct. at 484 (writing that "to deprive a person of counsel during the period prior to trial may be more damaging than denial of counsel during the trial itself"). Governmental attempts to secure incriminating statements from an accused are among the pretrial phases to which the Supreme Court has extended Sixth Amendment protection. *Maine v. Moulton*, 474 U.S. 159, 176, 106 S.Ct. 477, 487, 88 L.Ed.2d 481 (1985); *United States v. Henry*, 447 U.S. 264, 270, 100 S.Ct. 2183, 2186, 65 L.Ed.2d 115 (1980); *Massiah v. United States*, 377 U.S. 201, 206, 84 S.Ct. 1199, 1203, 12 L.Ed.2d 246 (1964).[7]

**5.** "[A]fter a formal accusation has been made ... a person who had previously been just a 'suspect' has become an 'accused' within the meaning of the Sixth Amendment...." *Jackson*, 475 U.S. at 632, 106 S.Ct. at 1409.

**6.** Justice Black explained in *Gideon:*
"[R]eason and reflection require us to recognize that in our adversary system of criminal justice, any person haled into court ... cannot be assured a fair trial unless counsel is provided for him. This seems to us to be an obvious truth. Governments, both state and federal, quite properly spend vast sums of money to establish machinery to try defendants accused of crime. Lawyers to prosecute are everywhere deemed essential to protect the public's interest in an orderly society. Similarly, there are few defendants charged with crime, few indeed, who fail to hire the best lawyers they can get to prepare and present their defenses. That government hires lawyers to protect and defendants who

have money hire lawyers to defend are the strongest indications of the widespread belief that lawyers in criminal courts are necessities, not luxuries. The right of one charged with crime to counsel may not be deemed fundamental and essential to fair trials in some countries, but not in ours." 372 U.S. at 344, 83 S.Ct. at 796.

**7.** There are, however, two threshold elements of the right to counsel in a confession context; these are: (1) deliberate governmental elicitation, see *United States v. Henry*, 447 U.S. 264, 290, 100 S.Ct. 2183, 2186, 65 L.Ed.2d 115 (1980), and (2) after the initiation of formal judicial proceedings. See *Kirby v. Illinois*, 406 U.S. 682, 689, 92 S.Ct. 1877, 1882, 32 L.Ed.2d 411 (1972) (plurality opinion) (holding that the Sixth Amendment right to counsel attached "at or after the initiation of ... proceedings—whether by way of formal charge, preliminary hearing, indictment, information, or arraignment").

■ Because Sixth Amendment counsel's functions are different than those of Fifth Amendment counsel, the Supreme Court has intimated that in certain situations, Sixth Amendment counsel will be so indispensable that waiver of counsel will be invalid. In *Patterson v. Illinois*, 487 U.S. 285, 108 S.Ct. 2389, 101 L.Ed.2d 261 (1988), the accused, who had been indicted, did not have a lawyer (in contrast to *Jackson*, the accused did not invoke that right). The Court held that the accused's Sixth Amendment right to counsel, as such, did not bar the police from initiating a meeting with him, obtaining a waiver of the right to counsel, an thereafter questioning him. The *Patterson* Court rejected the accused's claim that because the Sixth Amendment right to counsel arose with indictment, the accused in effect had made a request to deal with police only through counsel, precluding the police from initiating interrogation after indictment except through defense counsel. The Court distinguished *Jackson*, noting that Patterson had "at no time sought to exercise his right to have counsel present." 108 S.Ct. at 2394. The Court went further to hold that "an accused who is admonished with the warnings prescribed by this Court in *Miranda*, has been sufficiently apprised of the nature of his Sixth Amendment rights, and of the consequences of abandoning those rights, so that waiver on this basis will be considered a knowing and intelligent one." *Patterson*, 108 S.Ct. at 2396–97 (citation omitted).[8] Nevertheless, the *Patterson* Court cautioned that "as a matter of some significance" the accused "had not retained, or accepted by appointment, a lawyer to represent him at the time he was questioned by authorities." The Court concluded that "[o]nce an accused has a lawyer, a distinct set of constitutional safeguards aimed at preserving the sanctity of the attorney-client relationship takes effect." 108 S.Ct. at 2393 n. 3. The Court was careful to stress:

> "This does not mean, of course, that all Sixth Amendment challenges to the conduct of postindictment questioning will fail whenever the challenged practice would pass constitutional muster under *Miranda*. For example, we have permitted a *Miranda* waiver to stand where a suspect was not told that his lawyer was trying to reach him during questioning; in the Sixth Amendment context, this waiver would not be valid.

> "Thus, because the Sixth Amendment's protection of the attorney-client relationship—the right to rely on counsel as a medium between the accused and the State—extends beyond *Mirand*'s protection of the Fifth Amendment right to counsel ... there will be cases where a waiver which would be valid under *Miranda* would not suffice for Sixth Amendment purposes." *Patterson*, 108 S.Ct. at 2397 n. 9 (citations and original punctuation omitted).

Thus, the Supreme Court is unwilling to completely equate the Fifth Amendment right to counsel with that of the Sixth Amendment—suggesting that differences would result from the varying objectives of the two rights. When we accept that the Sixth Amendment, unlike the Fifth Amendment, protects "the attorney-client relationship—'the right to rely upon counsel as a

---

**8.** Specifically, in *Patterson*, the Supreme Court held:

> "[T]he key inquiry in a case such as this one must be: Was the accused, who waived his Sixth Amendment rights during postindictment questioning, made sufficiently aware of his right to have counsel present during the questioning, and of the possible consequences of a decision to forego the aid of counsel? In this case, we are convinced that by admonishing petitioner with the *Miranda* warnings, respondent has met this burden and that petitioner's waiver of his right to counsel at the questioning was valid." 108 S.Ct. at 2395 (footnote omitted).

This portion of the *Patterson* opinion has met with a great deal of criticism with commentators suggesting that the warnings given pursuant to *Miranda* should not suffice to show a knowing and intelligent waiver of Sixth Amendment counsel. See Dix, *Federal Constitutional Confessional Law: The 1986 and 1987 Supreme Court Terms*, 67 Tex.L.Rev. 231, 288 (1988); Banas, *Waiver of the Sixth Amendment Right to Counsel at Post–Indictment Interrogation*, 79 Journal of Criminal Law & Criminology 795, 833–834 (1988).

medium between the accused and the State,'" *Patterson*, 108 S.Ct. at 2397, quoting *Moulton*, 474 U.S. at 176, 106 S.Ct. at 487,[9] we must conclude that the Supreme Court intended that if a suspect is in fact represented by counsel and the case progresses to the point at which the Sixth Amendment applies, the Sixth Amendment imposes requirements—including waiver standards—not demanded by *Miranda* and the Fifth Amendment.[10] These requirements have the purpose of "preserving" the attorney-client relationship, an objective essential to Sixth Amendment concerns and of no significance to *Miranda* concerns. Thus, we hold that where a relationship between the accused and his attorney is established after the Sixth Amendment has become applicable, the Sixth Amendment precludes dissolution of that relationship in the absence of counsel.

█ Given the Supreme Court's express limitation of its holding in *Patterson* to unrepresented defendants, see 108 S.Ct. at 2393 n. 3, and its warning that a represented defendant would be differently situated, see 108 S.Ct. at 2397 n. 9, coupled with the

Court's consistent precedent barring deliberate police efforts to elicit incriminating statements in the absence of counsel when the accused is represented, we can find no room for the State's argument that the Supreme Court would permit the police-initiated interrogation of an indicted accused who has retained or has been appointed defense counsel. Argument that appellant validly waived his Sixth Amendment right to counsel after he was given the *Miranda* warnings belies the Supreme Court's warning that an attorney-client relationship, solidified after the client's indictment, is entitled to Sixth Amendment protection that *Miranda* warnings and subsequent waiver by the client alone are incapable of overcoming. Only through notice to defense counsel may authorities initiate the interrogation of an indicted and represented defendant. Indeed, that counsel must be notified of any attempt to interrogate his client was made clear in *Powell v. Texas*, — U.S. ——, 109 S.Ct. 3146, 106 L.Ed.2d 551 (1989) (per curiam). The *Powell* Court in its discussion of waiver of Sixth Amend-

9. In *Moulton*, unlike *Patterson*, the accused had an attorney to represent him—he had appeared with counsel to enter pleas of not guilty and was subsequently represented by counsel "in numerous proceedings ... during the ensuing year and a half." *Moulton*, 474 U.S. at 162, 106 S.Ct. at 480. Without notifying counsel, the police wired a cooperative co-defendant with a listening device. Officers were able to overhear Moulton make inculpatory statements when he met privately with the co-defendant and the State utilized the statements against Moulton in obtaining his conviction. The Supreme Court reversed the conviction holding that the State had violated Moulton's Sixth Amendment right to counsel:

"The Sixth Amendment guarantees the accused, at least after the initiation of formal charges, the right to rely on counsel as a 'medium' between him and the State. As noted above, this guarantee includes the State's affirmative obligation not to act in a manner that circumvents the protections accorded the accused by invoking this right.... *[K]nowing exploitation by the State of an opportunity to confront the accused without counsel being present is as much a breach of the State's obligation not to circumvent the right to the assistance of counsel as is the intentional creation of such an opportunity.* Accordingly, the Sixth Amendment is violated when the State obtains incriminating statements by

knowingly circumventing the accused's right to have counsel present in confrontation between the accused and a state agent." 474 U.S. at 170-71, 106 S.Ct. at 484 (emphasis added and footnotes omitted).

10. In *Patterson*, the dissenting Justices saw the issue as at what point in the adversary process it becomes impermissible for agents of the State to conduct interviews with an accused. The majority determined that the time of an individual's indictment would not constitute that point. The dissents, however, pointed out that several alternatives were conceivable as stopping points: "when the trial commences, when the defendant has actually met and has accepted representation by his or her appointed counsel, [or] when counsel is appointed." *Patterson*, 108 S.Ct. at 2399 (Stevens, J., dissenting). The dissenters would have halted all interrogation in the absence of counsel at that point where the Sixth Amendment had become applicable. *Patterson*, 108 S.Ct. at 2399 (Stevens, J., dissenting); 108 S.Ct. at 2405 (Blackman, J., dissenting). The four dissenter's observations joined with those of the majority lead us to conclude that a majority of the Justices would hold that the Sixth Amendment will impose higher waiver standards in those situations in which higher standards appear necessary to preserve the integrity of preexisting attorney-client relationships.

ment counsel in a capital murder case, wrote:

> "[T]he waiver discussions contained in [*Estelle v.*] *Smith,* 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981) and *Buchanan* [*v. Kentucky,* 483 U.S. 402, 107 S.Ct. 2096, 97 L.Ed.2d 336 (1987)] deal solely with the Fifth Amendment right against self-incrimination. Indeed, both decisions separately discuss the Fifth and Sixth Amendment issues so as not to confuse the distinct analysis that apply. No mention is made of waiver in the portion of either opinion discussing the Sixth Amendment right. This is for good reason. While it may be unfair to the State to permit a defendant to use psychiatric testimony without allowing the State a means to rebut that testimony, it certainly is not unfair to require the State to provide counsel with notice before examining the defendant....

> "The distinction between the appropriate Fifth and Sixth Amendment analysis was recognized in the *Buchanan* decision. In that case, the defendant waived his Fifth Amendment privilege by raising a mental-status defense. This conclusion, however, did not suffice to resolve the defendant's separate Sixth Amendment claim. Thus, in a separate section of the opinion the Court went on to address the Sixth Amendment issue, concluding that on the facts of that case counsel knew what the scope of the examination would be before it took place." *Powell,* 109 S.Ct. at 3149 (citations omitted).

See also *Estelle v. Smith,* 451 U.S. 454, 471, 101 S.Ct. 1866, 1877, 68 L.Ed.2d 359 (1981) (Where defendant had been indicted and counsel appointed before he was interviewed at jailhouse by psychiatrist appointed to determine competency to stand trial and counsel had not been notified of the examination, the defendant's Sixth Amendment right to counsel was violated when the State utilized the results of the examination at the defendant's trial.)

▪ In the case before us, at the time of the police-initiated interrogation, appellant had been indicted for capital murder and had been appointed counsel.[11] Appellant had met with counsel. The Sixth Amendment right to counsel had attached at the time appellant was indicted and the attorney-client relationship was established; as such, appellant's unilateral waiver of his Sixth Amendment right was invalid despite appellant having received the required *Miranda* warnings. Appellant's subsequent confession was obtained in violation of his Sixth Amendment right to counsel and the trial court erred in refusing to suppress it.

▪ Finally, we hold that introduction of the confession into evidence was not harmless beyond a reasonable doubt. See *Satterwhite v. Texas,* 486 U.S. 249, 108 S.Ct. 1792, 100 L.Ed.2d 284 (1988). Shortly after a series of convenience store robberies, appellant shot and killed a police officer. Gail Means Alexander was the only witness to the shooting. She had accompanied appellant in the robberies and the two had fled in her car. Alexander testified that appellant shot the officer five times with a .357 Magnum.

Appellant tried to discredit Alexander's testimony by showing that it was she who had fired at a second police officer and that the Magnum was actually a gun that she had stolen, thus implying that she actually shot and killed the first officer. Alexander's testimony was further discredited

---

11. At trial, the investigating officers testified that they did not know counsel had been appointed to represent appellant. Such does not alter the opinion of this Court. In *Michigan v. Jackson* a similar argument was made by the investigating officers that they were unaware Jackson had previously requested counsel from other state agents and, as such, they should not be bound by *Edwards.* The Supreme Court disagreed and determined that Sixth Amendment principles require that knowledge concerning the Sixth Amendment right of confron-tation between the State and an individual be "impute[d] from one state actor to another." 475 U.S. at 634, 106 S.Ct. at 1410. In the case before us, the Greg County Assistant District Attorney contacted appellant's attorney to inform him that he had been appointed by a magistrate to represent appellant in this case. Moreover, the attorney informed an investigator with the District Attorney's Office that he represented appellant. We must impute this knowledge that appellant was represented to the investigating officers.

when the second police officer testified that Alexander fired at him when he tried to arrest her. Alexander had denied ever shooting at the officer and denied knowledge of the robberies although before testifying against appellant she had pled guilty to attempted capital murder. Besides Alexander's testimony, appellant's confession was the only other piece of direct evidence to prove that he was responsible for the police shooting. Given the state of the record before us, we cannot say beyond a reasonable doubt that appellant's confession did not contribute to his conviction. Accordingly, the judgment is reversed and the cause is remanded to the trial court.

CLINTON, TEAGUE and DUNCAN, JJ., concur in the result.