**Jose Bernardo JIMENEZ, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 13–98–465–CR.**

Court of Appeals of Texas,
Corpus Christi.

Aug. 24, 2000.

Joseph A. Connors, III, McAllen, for appellant.

Yolanda De Leon, Dist. Atty., John A. Olson, Asst. Dist. Atty., Brownsville, for State.

Before Justices HINOJOSA, CHAVEZ, and RODRIGUEZ.

## O P I N I O N

Opinion by Justice HINOJOSA.

A jury found appellant, Jose Bernardo Jimenez, guilty of the offense of murder,[1] and the trial court assessed his punishment at forty years imprisonment. By twelve points of error, appellant contends: (1) the evidence is legally insufficient to show the truck alleged to have been stolen by appellant had a market value of more than $750.00; (2) the evidence is legally insufficient to prove the felony theft element; (3) the trial court erred in making an affirmative deadly weapon finding; (4) the trial court erred in admitting appellant's written confession; (5) the trial court abused its discretion by finding appellant knowingly, intelligently, and voluntarily waived his right to a lawyer when he made a written confession; (6) the trial court erred in denying appellant's motion for new trial; and (7) appellant was subjected to double jeopardy. We reverse and remand for a new trial.

### A.  BACKGROUND

On June 4, 1989, Candelario Rivera traveled to South Padre Island to fish with some friends. About 7:30 p.m., he returned to his Ford pickup truck to retrieve some gear. As he and a friend were approaching the vehicle, the truck was backing out of the parking space. Someone was stealing his truck. Candelario ran toward the truck and hit the window, but was unable to see who was in the vehicle. Candelario then called 911 and reported that someone was stealing his vehicle.

After the truck had been reported stolen, police officers in the area were notified to be on the look out for the truck. Upon receiving the dispatch call around 7:48 p.m., Deputy Arnold Flores proceeded to the intersection of State Highway 48 and Farm to Market Road (FM) 511 because most stolen vehicles head toward the Brownsville Gateway Bridge which goes into Mexico, and Highway 48 is "one of the only roads that heads that way" from the Island. When a truck, matching the description of the stolen vehicle first approached Deputy Flores position, it was traveling at a normal rate of speed. As the vehicle passed Deputy Flores, he began to follow it with his lights and sirens on, the vehicle began to travel at a high rate of speed. During the pursuit, the driver of the stolen vehicle traveled at speeds in excess of seventy to eighty-five miles per hour and drove in lanes against the traffic.[2]

As the stolen vehicle entered the intersection of Highway 48 and Price Road, the vehicle went through the intersection, ignoring the red light. As the truck traveled into the intersection, it collided with a yellow vehicle that was turning from Price Road into the intersection.[3] The collision flipped the truck over onto its roof. The yellow vehicle split in half. There were five individuals in the vehicle that was hit; two were killed in the accident, including

---

1.  Appellant was convicted under TEX. PEN. CODE ANN. § 19.02(a)(3) (Vernon 1989). The penal code has since changed and the offense is now found at TEX. PEN.CODE ANN. § 19.02(b)(3) (Vernon 1994).

2.  Highway 48 is a four-lane road with a turning lane in the middle. The speed limit on Highway 48 in this area was 55 mph.

3.  The victim's vehicle had the green light and the right of way.

Brenda Lee Alvarado, a two-year-old child in the backseat of the vehicle. Brenda Lee is the subject of the indictment in this case. The other person who died in the collision was Maria de Jesus Alvarado.

As Deputy Flores proceeded into the intersection toward the overturned truck, he saw an individual climbing out of the driver's side window. The individual ran from the intersection to a residential area. Deputy Flores began to chase after him, but lost the individual in the residential area. Other officers, including Lieutenant George Gavito, joined the search for the individual. Appellant was found hiding on the roof of a house by Deputy George Delgado. Appellant was then transported to the Cameron County Sheriff's Department where he gave a written confession.

### B. Procedural History

On October 25, 1989, appellant was indicted for the felony murder of Brenda Lee Alvarado in cause number 89–CR–1060. Appellant was separately indicted for the felony murder of Maria de Jesus Alvarado in cause number 89–CR–1059.[4]

On February 1, 1990, appellant filed a motion to suppress his confession. On February 9, 1990, the State informed the court that the cases would be tried separately. On February 9, 1990, after a pretrial hearing, the trial court denied appellant's motion to suppress his confession.

The trial in cause number 89–CR–1060 began on February 20, 1990, and the jury found appellant guilty of murder as charged in the indictment on February 22, 1990. On April 5, 1990, the trial judge assessed punishment at forty years imprisonment.

On May 14, 1990, appellant pleaded guilty to the indictment in cause number 89–CR–1059. The trial court found him guilty and assessed his punishment at sixty years imprisonment. The judgment in cause number 89–CR–1059 was rendered on May 18, 1990. The judgment in cause number 89–CR–1060 was rendered on May 20, 1990.

On June 2, 1998, cause number 89–CR–1060 was transferred from the 107th District Court of Cameron County to the 197th District Court of Cameron County. On July 15, 1998, the Texas Court of Criminal Appeals granted appellant's writ of habeas corpus allowing him an out-of-time appeal because his trial counsel had failed to file a notice of appeal or withdraw as counsel. On August 25, 1998, appellant filed his notice of appeal. On August 31, 1998, appellant filed a motion for new trial. On September 14, 1998, the trial court denied appellant's motion for new trial.

### C. The Suppression Hearing

In his fourth, fifth, and sixth points of error, appellant contends the trial court erred in failing to suppress his written confession. Appellant argues the statement was obtained after he invoked his right to counsel, and the trial court abused its discretion in finding that appellant had knowingly, intelligently, and voluntarily waived his right to counsel.

Appellant, in his pretrial motion to suppress, alleged that his confession resulted from: (1) inadequate warning of statutory and constitutional rights; (2) involuntariness because at the time the confession was made appellant was still under the influence of alcohol and in a state of shock; (3) improper inducements by law enforcement officers; (4) coercion through the "acore tactics" of law enforcement officers immediately before making his confession; (5) the lack of advice concerning the nature of the offense that the interrogation related to; and (6) denial of the right to counsel because the statement was obtained by continuing interrogation after appellant had requested to speak to an attorney.

At the hearing on the motion to suppress appellant's confession, Sergeant Luis Martinez and appellant testified.

---

4. Cause number 89–CR–1059 is not the subject of this appeal.

Martinez testified he first contacted appellant on June 4, 1989, at approximately 8:20 p.m. Martinez had been called by Lieutenant George Gavito to come to the Sheriff's Department to interview a suspect apprehended in a traffic accident. Appellant had been arrested for his involvement in a fatal traffic accident. Before interviewing appellant, Martinez warned him of his constitutional rights. Appellant was cooperative and never indicated he wanted to terminate the interview or talk to a lawyer. Martinez made no promises to appellant, did not coerce him, and was not wearing a gun during the interview. Martinez believed that appellant was not intoxicated during the interview, and appellant did not exhibit the symptoms of shock. After giving a statement, appellant was afforded the opportunity to read it before he signed it. The signing of the statement was witnessed by Deputy Roy Armendariz and Elsie Guerra.

On cross-examination, Martinez testified he did not know how long appellant had been in custody before the interview. He questioned appellant for about forty minutes, but knew nothing about the conditions under which appellant was kept before or after the interview. Martinez did not know if anyone else had talked to appellant before he arrived to interview him. Roy Armendariz and Elsie Guerra were present during the entire interview.

Appellant testified that Lieutenant Gavito took him from the scene of the accident to the Sheriff's Department. While in the car, Gavito mistreated him and continually asked him questions, but at no time did Gavito inform appellant of his rights. Appellant told Gavito that he needed an attorney. Once at the Sheriff's Department, Gavito continued to beat appellant in the presence of two other deputies. Before Martinez came to question appellant, Gavito told appellant "to say everything, to testify. And he kept telling [him], 'Yes, you are the one that stole the cars' and he would beat up on [him]." Appellant told Gavito that "[he] didn't know anything."

Appellant intended that to mean that he did not want to say anything to the officers. Gavito told appellant to say anything that could help him.

When appellant made the statement to Martinez, Elsie Guerra and Roy Armendariz were not present. Martinez spoke to appellant in English and appellant "[did] not understand much English." Appellant did not read the statement he made before he signed it. Appellant made the statement because he was scared as a result of the treatment he received from Gavito. Gavito said to him, "You're going to go with [Martinez]. You're going to talk to him, and you're going to tell him everything he tells you to say."

At the suppression hearing, the trial court ruled that appellant's statement was voluntarily and freely made by appellant, without compulsion or coercion. The court further found that appellant waived his rights to counsel and to remain silent.

### D. ANALYSIS

Appellant, in his motion to suppress, through evidence produced at the hearing, and in his appellate brief, has continued to assert that police continued to interrogate him after he invoked his right to counsel. The State, in its evidence at the hearing and in its brief on appeal, continues to rely solely on Martinez's assertion that appellant did not invoke his right to counsel and, in fact, waived his rights before confessing.

■ Martinez's testimony rebuts the assertion that appellant requested counsel *from him* before and during his interrogation. As a general rule, the appellate courts should afford almost total deference to a trial court's determination of the historical facts that the record supports, especially when the trial court's fact findings are based on an evaluation of credibility and demeanor. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex.Crim.App.1997). Accordingly, because the trial court's ruling

in this respect is supported by the record, it will not be disturbed.

However, appellant's testimony that he told Gavito he needed a lawyer was *not* contradicted by the State. In addition, the State did not explain the absence of Gavito who could have contradicted appellant's assertion. Whenever the accused's testimony reflects that he was unlawfully caused to make a written confession, and his testimony is uncontradicted, then the accused's written confession is inadmissible as a matter of law. *Moore v. State,* 700 S.W.2d 193, 202 (Tex.Crim.App.1985); *Sherman v. State,* 532 S.W.2d 634, 636 (Tex.Crim.App.1976); *McKenna v. State,* 797 S.W.2d 216, 220 (Tex.App.—Corpus Christi 1990, no pet.). The State's failure to refute a defendant's allegations lends support to the conclusion that the State cannot refute the allegations. *See Barton v. State,* 605 S.W.2d 605, 607–08 (Tex. Crim.App.1980); *Sherman,* 532 S.W.2d at 636; *Farr v. State,* 519 S.W.2d 876, 879 (Tex.Crim.App.1975).

Since the uncontradicted evidence shows appellant told Gavito that he needed an attorney before Martinez interrogated him, we must determine what effect, if any, appellant's invocation of his right to counsel had on the legality of the confession.

Although Martinez testified that appellant waived his rights, and although the confession contains a written waiver of rights, we find that these "waivers" are invalid. When a defendant informs police or a magistrate of his desire to invoke his right to counsel, any subsequent "waiver" of that right will be invalid when such a waiver is prompted by further police questioning. *See Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981); *Holloway v. State,* 780 S.W.2d 787, 789 (Tex.Crim.App.1989). In *Edwards,* the United States Supreme Court held that once a suspect has invoked his right to counsel, the police may not question him in the absence of counsel unless the suspect initiates the contact. *Edwards,* 451 U.S. at 484–85. *See Tanner v. State,* 712 S.W.2d 523, 525 (Tex.Crim.App.1986). The uncontradicted evidence shows that appellant did not initiate the conversation with Martinez. Accordingly, appellant's "waiver" of his right to counsel was invalid. Appellant's prior assertion of his right to counsel to Gavito restricted Martinez's ability to interrogate him. *See Arizona v. Roberson,* 486 U.S. 675, 108 S.Ct. 2093, 100 L.Ed.2d 704 (1988) (officer who proposes to initiate an interrogation needs to determine whether the suspect has previously requested counsel).

Martinez had a duty, before interrogating appellant, to determine whether he had previously invoked his right to counsel. The record does not show that Martinez made this inquiry. In fact, Martinez's testimony shows that he did not know the circumstances of appellant's custody prior to his interrogation.

Under these uncontroverted facts, we must find that the police did not honor appellant's request to speak with an attorney. Accordingly, the trial court erred in finding that the confession was admissible. Appellant's fourth, fifth, and sixth points of error are sustained.

Based on our determination that the trial court erred in finding that appellant's confession was admissible, we need not address appellant's remaining points of error. *See* Tex.R.App. P. 47.1.

The judgment of the trial court is reversed, and the cause is remanded to the trial court for further proceedings consistent with this opinion.