**Albert T. FLORES, Appellant,**

v.

**STATE of Texas, Appellee.**

No. 04–99–00338–CR.

Court of Appeals of Texas, San Antonio.

April 11, 2001.

Rehearing En Banc Overruled May 4, 2001.

1. As a former district judge of a court with Title III preference, I must note that this could be a very limited class.

Kimberly E. Young, San Antonio, for Appellant.

Alan E. Battaglia, Asst. Crim. Dist. Atty., San Antonio, for Appellee.

Sitting: PHIL HARDBERGER, Chief Justice, ALMA L. LÓPEZ, Justice, PAUL W. GREEN, Justice.

## OPINION

PAUL W. GREEN, Justice.

Albert T. Flores was convicted of murder and sentenced to life imprisonment. In his first two points of error, Flores complains the trial court's admission of his statement violates his state and federal right to counsel and right against self-incrimination. In his third point of error, Flores argues the trial court erroneously denied his request for a jury instruction on self-defense. We affirm the conviction

*Background*

On or about January 7, 1998, Carl O'Conner was shot eleven times and died as a result of the gun shot wounds. Detective Frank Martinez was assigned to lead the O'Conner murder investigation. During January 1998, Flores gave two statements to the police, claiming he had nothing to do with O'Conner's murder. Ernie Glenn, a Bexar County attorney, testified Flores retained Glenn as his attorney after giving the two statements.

On February 12, 1998, Glenn called Detective David Evans to inform him Glenn represented Flores. During the conversation, Glenn stated Flores did not want to talk to the police and that the police should not contact Flores without first notifying Glenn. Detective Evans told Detective Martinez of the call, and Detective Martinez made note of Glenn's representation in his prosecution guide.

On August 12, 1998, a warrant issued for Flores's arrest. Detective Martinez and Detective Andrew Carrian arrested Flores at a New Braunfels movie theater and escorted him to the Comal County Sheriff's Office where Flores was read his rights and arraigned by the local magistrate. Flores indicated he understood his rights and signed the warning card. Detectives Carrian and Martinez testified Flores began to ask questions, wanting to know what he had been arrested for and what evidence and witnesses the police had. The detectives testified Flores never asked for an attorney, but rather requested to give his side of the story. The detectives again read Flores his rights, which he waived. Then, the detectives took Flores's statement. Detective Martinez admitted he did not call Glenn to inform him Flores was being arrested or giving a statement.

In his statement, Flores said he had known O'Conner for several years. After Flores told O'Conner he would no longer sell drugs for him, O'Conner began threatening Flores, Flores's mother, and Flores's girlfriend. Flores stated that on the day in question, Flores and a passenger picked up O'Conner, who rode in the back seat. O'Conner was behaving unusually edgy and asked Flores for the money he owed him. As Flores drove, O'Conner leaned forward and punched the windshield, cracking it. O'Conner then began hitting the sides of the vehicle. Flores stated he was unsure whether O'Conner had a gun because O'Conner wore baggy clothes. Flores picked up his .22 caliber gun, aimed the gun over his right shoulder at O'Conner, and began shooting, firing nine times. Flores stopped the car in an alley and pulled O'Conner from the car. Then, Flores reached into the glove box and took out a .38 caliber gun. Claiming he was afraid O'Conner would come after him, Flores shot O'Conner in the head twice with the weapon.

Flores filed a motion to suppress all three statements. At the suppression hearing, Flores denied asking any questions after his arrest except to request his attorney. Flores testified the police, not he, initiated conversation after his arrest. Flores claimed Detectives Martinez and Carrion emphasized how Texas was "big on the death penalty" and that giving a statement might result in a probated sentence. Flores claimed he gave the third statement based on what the detectives said about the death penalty.

The trial court ruled Flores's first two statements were inadmissible. However, rejecting Flores's testimony regarding the circumstances following his arrest, the trial court ruled Flores's third statement was admissible. Specifically, the trial court found Flores had initiated the conversation and voluntarily waived his rights before giving the statement. At trial, Flores did

not testify, but the State introduced his third statement. The jury returned a verdict of guilt, and Flores was sentenced to life imprisonment.

### Admission of Flores's Statement

In points of error one and two, Flores claims the trial court failed to suppress his third statement. Flores claims he invoked his right to counsel six months before his arrest, and therefore, his constitutional and statutory rights were violated when the police re-initiated interrogation and took his statement outside the presence of his counsel. We must determine whether Flores voluntarily waived his right against self-incrimination and right to counsel before giving the statement.

### A. Standard of Review

The appropriate standard of review for a suppression ruling is a bifurcated review, giving almost total deference to the trial court's findings of fact, but conducting a *de novo* review of the court's application of law to those facts. *State v. Ross*, 32 S.W.3d 853, 856 (Tex.Crim.App. 2000) (citing *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex.Crim.App.2000) and *Guzman v. State*, 955 S.W.2d 85, 88–89 (Tex.Crim.App.1997)). We afford almost total deference to the trial court's findings of fact because the trial court is the exclusive judge of witness credibility, and the judge may believe or disbelieve any, all, or part of a witness's testimony even if the testimony is not controverted. *Id.* at 855; *Castro v. State*, 914 S.W.2d 159, 162 (Tex. App.—San Antonio 1995, pet. ref'd).

### B. The Right Against Compelled Self-Incrimination

To protect against compelled self-incrimination, the Fifth Amendment entitles a defendant to the assistance of counsel if invoked. *Holloway v. State*, 780 S.W.2d 787, 792 (Tex.Crim.App.1989). Once an accused asserts the Fifth Amendment right to counsel, all interrogation must cease and may begin again only if counsel has been made available or if the accused initiates further communication. *Id.* at 789; *Meeks v. State*, 897 S.W.2d 950, 953 (Tex.App.—Fort Worth 1995, no pet.) (citing *Edwards v. Arizona*, 451 U.S. 477, 484–85, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981)); *see Castro*, 914 S.W.2d at 162 (holding that because defendant initiated conversation leading to statement, trial court did not err in admitting statement).

The trial court found Flores had initiated conversation with the officers and voluntarily waived his rights. The record supports this finding. The detectives testified Flores asked questions about the case after his arrest and requested to tell "his side of the story." The detectives testified Flores was read his rights numerous times, stated he understood those rights, and waived them before making the statement. Although Flores testified he did not initiate the conversation and that he asked for an attorney, the trial judge was in the best position to assess the credibility of the contradictory testimony of the detectives and Flores. *Ross*, 32 S.W.3d at 855. Affording proper deference to the trial court, we hold the admission of Flores's statement was not in violation of his state and federal right against self-incrimination.

### C. The Right to the Assistance of Counsel

Flores also argues his statement was taken in violation of his state and federal right to counsel. Specifically, Flores argues because his Sixth Amendment right to counsel had attached and been invoked, he could not give a valid waiver outside the presence of counsel. The Sixth Amendment to the United

States Constitution guarantees more than entitlement to counsel upon invocation. *Holloway*, 780 S.W.2d at 793. Designed to remedy any imbalance in our adversary system, the Sixth Amendment promises that, once adversarial proceedings have begun, an accused is entitled to defense counsel at all "critical stages" of the prosecution, absent a valid waiver. *Upton v. State*, 853 S.W.2d 548, 553 (Tex.Crim.App. 1993); *State v. Hernandez*, 842 S.W.2d 306, 312 (Tex.App.—San Antonio 1997, pet. ref'd).

■ The State acknowledges and we agree that Flores's Sixth Amendment right to counsel attached before he gave his third statement. *See Fuller v. State*, 829 S.W.2d 191, 205 (Tex.Crim.App.1992); *Hernandez*, 842 S.W.2d at 311. We must determine whether Flores waived his Sixth Amendment right to counsel before giving that statement. "[O]nce the right to counsel has attached and been invoked, any subsequent waiver during police-initiated interrogation is ineffective unless counsel has first given permission for the interrogation." *Cobb v. State*, No. 72,807, 2000 WL 275644, at *3, —— S.W.3d ——, at —— (Tex.Crim.App. Mar.15, 2000); *Upton*, 853 S.W.2d at 553; *Holloway*, 780 S.W.2d at 795.

■ "[T]here will be cases where a waiver which would be valid under *Miranda* would not suffice for Sixth Amendment purposes." *Holloway*, 780 S.W.2d at 794. Importantly, however, the Sixth Amendment does not prevent an accused who is represented by counsel from voluntarily choosing to initiate conversation with the police in the absence of his counsel. *Hernandez*, 842 S.W.2d at 318 (citing *Michigan v. Harvey*, 494 U.S. 344, 352, 110 S.Ct. 1176, 108 L.Ed.2d 293 (1990)); *accord Mann v. Scott*, 41 F.3d 968, 976 (5th Cir.1994); *United States v. Cummings*, 937 F.2d 941, 946 (4th Cir.1991). A hold-

ing that a criminal defendant may not initiate conversation with the police and waive his rights outside the presence of his counsel "refuse[s] to grant proper respect to [a defendant's] own desire to confess his criminal conduct on his own terms." *Lucas v. State*, 791 S.W.2d 35, 49 (Tex.Crim. App.1989).

The record reflects the police did not contact Flores's attorney before Flores's arrest. The record is also clear that Flores's counsel was not present when Flores gave his third statement. However, the trial court found Flores, not the police, initiated the conversation leading to the confession: "[Flores] was questioned while he was in custody concerning the case, but the defendant initiated the conversation with the officers, gave up his rights. He was not threatened, coerced or promised anything for his statement."

As with our discussion of Flores's Fifth Amendment rights, this finding is supported by the record. Although Flores testified to the contrary, because the trial court is the sole judge of credibility of the witnesses at a suppression hearing, we afford the trial court much deference. *Ross*, 32 S.W.3d at 856. Therefore, because the statement was not the result of police-initiated interrogation, we hold Flores could and did voluntarily waive his state and federal right to counsel before giving the statement. The trial court did not err in ruling the statement was admissible.

### Jury Instruction on Self–Defense

■ In his third point of error, Flores complains the trial court erred in denying his request for a jury instruction on self-defense. A defendant is entitled to a jury instruction on every issue raised by the evidence, whether it is strong or weak, unimpeached, or contradicted. *Hamel v. State*, 916 S.W.2d 491, 493 (Tex.Crim.App.

1996); *Bignall v. State,* 887 S.W.2d 21, 24 (Tex.Crim.App.1994). However, if the testimony or other evidence viewed in the light most favorable to the defendant does not establish self-defense, an instruction is not required. *Granger v. State,* 3 S.W.3d 36, 38 (Tex.Crim.App.1999).

 A defendant requesting an instruction on self-defense with deadly force must show: (1) he was justified in using force; (2) a reasonable person in his situation would not have retreated; and (3) he reasonably believed[1] the use of deadly force was immediately necessary to protect himself against another's use or attempted use of unlawful deadly force, or to prevent the imminent commission of specified violent crimes. Tex. Pen.Code Ann. § 9.32 (Vernon Supp.2000). In the absence of the use or attempted use of deadly force by the deceased, a Section 9.32 instruction is not available to the defendant. *Werner v. State,* 711 S.W.2d 639, 644 (Tex.Crim.App. 1986).

In *Riddle v. State,* the appellant-defendant hit the victim in the head with a tire iron after the victim attempted to sexually assault him. *Riddle v. State,* 888 S.W.2d 1, 6 (Tex.Crim.App.1994). The court observed:

> Appellant remembered the victim raising his hands, grabbing his head and moaning. Thereafter, appellant hit the victim in the head at least fourteen more times. There was no testimony the victim ever attempted to sexually assault appellant or harm him in any way after the initial blow to the victim's head. Appellant did not testify he could not retreat or he attempted to retreat but was prevented from doing so. There was no evidence [the victim] wielded a weapon

which prevented appellant from leaving. Appellant was not justified in his use of deadly force.... A reasonable person would have retreated without using deadly force, and therefore, appellant was not entitled to an instruction on self-defense.

*Id.* at 6–7.

In this case, although there was evidence Flores was afraid of O'Conner, his actions on the day in question show otherwise. While Flores drove down the road, he shot O'Conner nine times with a .22 caliber gun, emptying the gun's magazine. Then, Flores stopped the car in an alley and pulled O'Conner out of the car. Rather than retreating, Flores took another gun from the glove box and shot O'Conner twice more at close range.

Even in the light most favorable to Flores, a rational juror could not believe Flores continued to reasonably fear for his life after the first nine shots. *See id.* Further, a reasonable juror could not believe "a reasonable person in [Flores's] situation would not have retreated." *Id.* at 7. The trial court did not err in denying Flores's request for an instruction on self-defense.

*Conclusion*

We overrule Flores's points of error. Accordingly, we affirm the conviction.

---

**1.** "Reasonable belief" is defined as "a belief that would be held by an ordinary and prudent man in the same circumstances as the actor." Tex. Pen.Code Ann. § 1.07(a)(42) (Vernon 1994).