

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### No. PD-1552-07

**THE STATE OF TEXAS, Appellant**

**v.**

**DAVID MALDONADO, Appellee**

### ON APPELLEE'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE THIRTEENTH COURT OF APPEALS
### NUECES COUNTY

**HOLCOMB, J., filed a dissenting opinion.**

I respectfully dissent. After reviewing the record, I conclude that the trial court did not abuse its discretion in suppressing appellee's confession.[1] Therefore, I would reverse the judgment of the court of appeals and affirm the order of the trial court.

I do not disagree with the facts as outlined by the majority. However, I conclude that it is

---

[1] A trial court's ruling on a motion to suppress is reviewed on appeal for abuse of discretion. *State v. Dixon*, 206 S.W.3d 587, 590 (Tex.Crim.App. 2006). In other words, the trial court's ruling will be upheld if it is reasonably supported by the record and is correct under any applicable legal theory. *Ibid.*

necessary to highlight additional, relevant testimony.  Detective Ramirez was the only witness who testified at the suppression hearing.  The following are portions of his testimony:

Q.  Did you file an affidavit and complaint seeking a warrant for Mr. David A. Maldonado?

A.  Yes, I did.

Q.  Do you recall the date that you filed the complaint?

A.  I believe dated May 1, 2006.

Q.  In fact, was Mr. Maldonado arrested on the warrant?

A.  Yes, he was.

* * * * *

Q.  So you actually called the jail inquiring if the defendant was there?

A.  If he was in custody, yes.

Q.  Was he in the jail?

A.  Yes.  They told me he was there.  I told them I would be over to talk to him and they said okay.

* * * * *

Q.  When you arrived at the jail, what happens?

A.  We arrive, I went to the jailer and said I am here for David.  He said, okay, we's [sic] got him ready.  They brought him out.  I introduced myself and told him I am Detective Ramirez and this is Detective Flores.  At that time, he handed me a letter that was folded.  He said, I been waiting to talk to somebody, waiting to talk to you, something to that effect, and handed me the letter.  I asked him what is this.  He says, that's what happened that night.  So I said, you want to talk to me about what happened and he said yes.  Okay.  We have to go to the station.  If you want to go to the station with me and he said yes.  So we took him to the station.

\* \* \* \* \*

Q. So when Mr. Maldonado was brought up to you, did you tell him who you were?

A. Yes, ma'am.

Q. Identified yourself?

A. Yes, ma'am – yes, sir.

Q. Did you tell him why you were there?

A. I told him that I was going to talk to him or we were going to talk. When I introduced myself, he gave me the form, the document.

Q. Did you continue to tell him why you were there, to talk to him?

A. Yes.

Q. Did you tell him that before you read the letter?

A. Yes. I told him before I read the letter.

The Sixth Amendment provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right ...to have the Assistance of Counsel for his defence." "Once adversary proceedings have commenced against an individual, he has the right to legal representation when the government interrogates him." *Brewer v. Williams*, 430 U.S. 387, 401 (1977). "The Sixth Amendment guarantees the accused, at least after the initiation of formal charges, the right to rely on counsel as a 'medium' between him and the State." *Maine v. Moulton*, 474 U.S. 159, 176 (1958). Implicit in this guarantee is the "[s]tate's affirmative obligation not to act in a manner that circumvents the protections accorded the accused by invoking this right." *Moulton*, 474 U.S. at 176.

Once a defendant has invoked the Sixth Amendment right to counsel, "[i]f...subsequent interrogation is initiated by law enforcement, no waiver of counsel (no matter how apparently

knowing and voluntary) is valid." *Holloway v. State*, 780 S.W.2d 787, 789-90 (Tex.Crim.App. 1989). Moreover, knowledge of an invocation of the Sixth Amendment is "impute[d]" from "one state actor to another." *Michigan v. Jackson*, 475 U.S. 625, 634 (1986); *See Holloway*, 780 S.W.2d at 795.

Given the evidence before the trial court at the time it ruled on appellee's motion, a reasonable trial court would have necessarily concluded that appellee's confession was taken in violation of his Sixth Amendment right to counsel. The testimony by Officer Ramirez established that he took affirmative steps by calling the jail, going to the jail, requesting that appellee be brought out into an open area of the jail, introducing himself and Detective Flores (an accompanying officer), and telling appellee that he was there to talk to him. All of these actions were taken at a time when the police knew that appellee had previously requested that counsel be appointed. Ramirez's testimony further showed that he took the initiative to set up an encounter with appellee outside the presence of his attorney, which is the exact conduct that violates what the Sixth Amendment guarantees. *Moulton*, 474 U.S. at 176.

The majority relies on the argument that Officer Ramirez did not have time to initiate the interrogation because appellee immediately handed Ramirez the letter before he could ask any questions. However, "[i]n a motion to suppress hearing, the trial court is the sole trier of fact and judge of credibility of the witnesses [and] may believe or disbelieve all or any part of the witness's testimony, even if that testimony is not controverted." *State v. Ross*, 32 S.W.3d 853, 855 (Tex.Crim.App. 2000). The trial court's findings of fact and conclusions of law show that the trial court based its ruling on *Edwards v. Arizona*, 451 U.S. 477 (1981), and *Holloway*, 780 S.W.2d 787; therefore, the trial court was clearly aware of the implication of these cases when it made its

decision. The trial court must have been convinced that Officer Ramirez initiated the communication by taking affirmative steps to set up the encounter with appellee, after appellee had requested counsel, and stating that he was there to talk to appellee outside the presence of counsel. It is reasonable to believe that when Officer Ramirez introduced himself, he stated in the same breath that he was there to talk to appellee about the offense. By making this statement, he initiated communication about the offense with appellee. Moreover, there was no evidence presented that Officer Ramirez went to the jail for any other purpose except to question appellee about the offense. Therefore, I would hold that the trial court's implicit finding that Officer Ramirez initiated the communication was absolutely reasonable.

Furthermore, the letter that appellee handed to Officer Ramirez was not a confession. It was a self-serving explanation of the events that occurred that night, not an invitation to be interrogated. The trial court could have reasonably concluded that Officer Ramirez, not appellee, initiated communication about the offense. Therefore, any subsequent waiver of counsel was invalid. *Holloway*, 780 S.W.2d at 789-90.

Had appellee called law enforcement or indicated to jail personnel that he wished to speak with someone about the offense, then I would be convinced that appellee initiated the conversation. However, that is not what occurred in this case.

In this case, Officer Ramirez had imputed knowledge that appellee had invoked his right to counsel. With this knowledge, Ramirez "circumvent[ed] the protections accorded the accused by invoking this right" when he set up an encounter with appellee outside the presence of his attorney. *Moulton*, 474 U.S. at 176.

Therefore, I respectfully dissent.

FILED: JUNE 4, 2008

PUBLISH