PD-0581-15, PD-0582-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 6/24/2015 1:58:38 PM
Accepted 6/25/2015 4:28:13 PM
ABEL ACOSTA
CLERK

**PD-No. 0582-15**
**PD-No. 0581-15**

# IN THE COURT OF CRIMINAL APPEALS OF TEXAS
## AUSTIN, TEXAS

| | | |
|---|---|---|
| **EDGAR ALBERTO ROMO**, | § | |
| Appellant, | § | |
| | § | **COURT OF APPEALS** |
| | § | NO. 05-13-00546 |
| | § | NO. 05-13-00547 |
| V. | § | |
| | § | **TRIAL COURT** |
| | § | NO. 199-82866-2012 |
| | § | NO. 19981976-2011 |
| | § | |
| **THE STATE OF TEXAS,** | § | |
| Appellee, | § | |

## CORECTED PETITION FOR DISCRETIONARY REVIEW
## FROM THE COURT OF APPEALS
## FIFTH JUDICIAL DISTRICT
## DALLAS, TEXAS

## CORRECTED PETITION FOR DISCRETIONARY REVIEW OF APPELLANT

FILED IN
COURT OF CRIMINAL APPEALS

June 25, 2015

ABEL ACOSTA, CLERK

**GEORGE J. PARNHAM**
TBN: 15532000

**PARNHAM & ASSOCIATES**
440 Louisiana Street, Suite 200
Houston, TX 77002
713-224-3967
713-224-2815(fax)

## IDENTITY OF PARTIES AND COUNSEL

Pursuant to Tex. R. App. P. 38.1(a)(2011), the parties to this suit are as follows:

**FOR THE STATE:**

| | |
|---|---|
| At Trial: | Chris Fredericks<br>TBN: 24044565 |
| | Paul Anfosso<br>TBN: 00796129 |
| On Appeal: | Greg Willis<br>TBN: 21653500 |
| | Collin County<br>Assistant District Attorneys<br>District Attorney<br>2100 Bloomdale, Suite 100<br>McKinney, Texas 75071 |

**FOR APPELLANT:**

| | |
|---|---|
| At Trial: | Sergio Aleman<br>TBN: 24027275<br>420 S Cesar Chavez, Suite 300<br>Dallas, Texas 75201 |
| | Robert Buchholz<br>TBN: 03290600<br>420 S Cesar Chavez, Suite 300<br>Dallas, Texas 75201 |
| On Appeal: | George J. Parnham<br>TBN: 15532000<br>440 Louisiana St., Suite 200<br>Houston, Texas 77002 |

# **TABLE OF CONTENTS**

IDENTITY OF PARTIES AND COUNSEL …………………………..…………….2

TABLE OF CONTENTS …………………………………………………..…….3

TABLE OF AUTHORITIES ……………………………………………….4

STATEMENT REGARDING ORAL ARGUMENT ……………….………….6

STATEMENT OF THE CASE …………………………………….…7

STATEMENT OF PROCEDURAL HISTORY …………………………….8

GROUNDS FOR REVIEW ……………………………………………….8

ARGUMENTS ………………………………………………………….8

PRAYER FOR RELIEF……………………………………………..……22

CERTIFICATE OF SERVICE ………………………………………………22

CERTIFICATE OF COMPLIANCE  ………………………………………23

# TABLE OF AUTHORITIES

**Cases**

*Ex parte Bagley,* 509 S.W.2d 332 (Tex. Crim. App. 1974)……….…….…8, 14, 16

*Ex Parte Stanley*, 703 S.W.2d 686 (Tex. Crim. App. 1986)………….……….17

*Fuller v. State*, 253 S.W.3d 220, 232 (Tex. Crim. Ap. 2008)……..……………15

*Fulminante v. Arizona,* 499 U.S. 279 (1991)………….…………………….18

*Garcia v. Dial*, 596 S.W.2d 524 (Tex Crim. App. 1980)………….…………17

*Herrera v. State*, 241 S.W.3d 520, 526 (Tex. Crim. App. 2007)………………10, 11

*Hobbs v. State*, 298 S.W.3d 193 (Tex. Crim. App. 2009)……….………………17

*Holloway v. State*, 780 S.W.2d 787 (Tex. Crim. App. 1989)……..……………17

*Joseph v. State*, 309 S.W.3d 20, 24 (Tex. Crim. App. 2010)……….…….………10

*Marin v. State*, 851 S.W.2d 275, 278-80 (Tex. Crim. App. 1993)………...……15, 17

*McCarthy*, 65 S.W.3d 47 (Tex. Crim. App. 2001)……….…………………….18

*McCulley v. State*, 352 S.W.3d 107, 115 (Tex.App.—Fort Worth 2011, pet ref'd).12

*Mendez v. State*, 138 S.W.3d 334, 341 (Tex. Crim. App. 2004)…………..……15

*Miranda v. Arizona*, 384 U.S 436, 478-79 (1966)…………….…..6, 8, 10, 11, 16

*Pennsylvania v. Muniz*, 496 U.S. 582 (1990)………….……………………..12

*Rhode Island v. Innis*, 446 U.S. 291 (1980)………….……………………12

*Romo v. State*, 2015 Tex. App. LEXIS 3911 (Tex. App.—Dallas, April 17, 2015)..7

*Sims v. State,* 326 S.W.3d 707 (Tex. Crim. App. 2010)……….…………..……17

*Sosa v. State*, 769 S.W.2d 909 (Tex. Crim. App. 1989)……….…………..…12

*Stansbury v. California*, 511 U.S. 318 (1994)…………………….…………11

*Thompson v. Koehane*, 516 U.S. 99 (1995)……………………………………12

*U.S. v. Patane*, 542 U.S. 630 (2004)………………………………………..11

**Rules**

TEX. CODE CRIM. PROC. ANN. art. 38.22, sec. 2(a)(1)-(5)…………………….10

TEX. CODE CRIM. PROC. ANN. art. 38.22 sec sec 2(a), 3(a)(2)………….…10

TEX. CODE CRIM. PROC. ANN. art. 38.22, sec.3(a)……………...….6, 9, 10, 11

TEX. CODE CRIM. PROC. ANN. art. 38.23(a)……………………………..11

TEX. R. EVID. 103(d)………………………………………………….…15

**Constitutional Provisions**

TEX CONST. art.1, sec. 10……………………………………………….…..8

U.S. CONST. amend. V.………………………………………………………8

## **STATEMENT REGARDING ORAL ARGUMENT**

Pursuant to Texas Rule of Appellate Procedure 39.7, Appellant hereby requests oral argument. Counsel is of the opinion that oral argument would serve to emphasize and clarify the important legal points regarding this Petition.

**TO THE HONORABLE COURT OF CRIMINAL APPEALS OF TEXAS:**

Under Rule 68 of the Texas Rules of Appellate Procedure, Petitioner,

**EDGAR ALBERTO ROMO** ("Romo"), in the above cause, through counsel of

record George J. Parnham, respectfully submits this Petition for Discretionary

Review and in support would show the Court the following:

**STATEMENT OF THE CASE**

A jury convicted petitioner, Romo, for the offenses of Murder and

Aggravated Assault with a Deadly Weapon. In a memorandum opinion, the Fifth

Court of Appeals affirmed these convictions, finding, *inter alia*, that trial counsel

failed to properly preserve error related to the admission of Petitioner's post-arrest

statements. Specifically, the Court of Appeals declined to analyze and decide

whether the admission of certain post arrest statements, which were the product of

custodial interrogation yet not properly warned according to *Miranda v. Arizona*

and article 38.22 of the Code of Criminal Procedure, amounted to fundamental

error and held that these complaints were not properly preserved for review. This

petition challenges that holding and urges this Court to analyze and decide that the

admission of these unwarned, post-arrest statements which were the product of

custodial interrogation did constitute fundamental error and therefore requires that

these causes be reversed and remanded.

7

## STATEMENT OF PROCEDURAL HISTORY

On April 17, 2015, in a memorandum opinion, the Court of Appeals affirmed the convictions. *Romo v. State*, 2015 Tex. App. LEXIS 3911 (Tex. App.—Dallas, April 17, 2015).

## GROUNDS FOR REVIEW

### POINT OF ERROR

*The Court of Appeals erred in overruling Petitioner's first and second issues and holding that Petitioner did not preserve error because the admission of Petitioner's unwarned post-arrest statements which were the product of custodial interrogation constitute fundamental error.*

## ARGUMENTS

### POINT OF ERROR

*The Court of Appeals erred in overruling Petitioner's first and second issues and holding that Petitioner did not preserve error because the admission of Petitioner's unwarned post-arrest statements which were the product of custodial interrogation constitute fundamental error.*

The Fifth Court of Appeals declined to analyze whether the admission of Petitioner's unwarned post-arrest statements, the product of custodial interrogation, constituted fundamental error and held that trial counsel failed to properly preserve these matters for appellate review. Specifically, the Court of Appeals noted that, as an intermediate court, the Court was not "free to disregard the decisions of the

8

Court of Criminal Appeals" which require a timely, specific objection in order to "complain on appeal about the admissibility of statements within the framework of *Miranda*." Slip Op. at 7. In declining to analyze and decide whether the admission of these unwarned statements, produced through custodial interrogation, amounted to fundamental error and therefore could be raised for the first time on appeal, the Court of Appeals concluded that Petitioner did not preserve error at trial and therefore overruled his first and second issues on appeal pursuant to Texas Rule of Evidence 103(a)(1) and *Ex parte Bagley*[1].

The Law

The Fifth Amendment provides that an accused "shall not be compelled in any criminal case to be a witness against himself…" U.S. CONST. amend. V. In a subtle yet meaningful modification, the Texas Constitution provides that an accused "shall not be compelled to give *evidence* against himself…" TEX CONST. art.1, sec. 10 [emphasis added].

U.S. Law

In *Miranda v. Arizona*, the Supreme Court held that the Fifth Amendment to the United States Constitution prohibits use of an accused's oral statement made during custodial interrogation unless the accused is given certain warnings and he knowingly, intelligently, and voluntarily waives the rights set out in the warnings.

---

[1] 509 S.W.2d 332 (Tex. Crim. App. 1974).

*See Miranda*, 384 U.S 436, 478-79 (1966). Specifically, an accused must be given

the following warnings when subject to custodial interrogation:

that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney before and during questioning, and that if he cannot afford an attorney, one will be appointed for him prior to any questioning if he so desires.

*Id*.

Texas Law

Similarly, article 38.22, section 3(a) of the Code of Criminal Procedure

provides that no oral statement made by an accused during custodial interrogation

is admissible unless:

(1) an electronic recording, which may include motion picture, video tape, or other visual recording, is made of the statement;

(2) prior to the statement but during the recording the accused is given the warning in subsection (a) of section 2 above and the accused knowingly, intelligently, and voluntarily waives any rights set out in the warning;

(3) the recording device was capable of making an accurate recording, the operator was competent, and the recording is accurate and has not been altered;

(4) all voices on the recording are identified; and

(5) not later than the 20th day before the date of the proceeding, the attorney representing the defendant is provided with a true, complete, and accurate copy of all recordings of the defendant made under this article.

TEX. CODE CRIM. PROC. ANN. art. 38.22, sec.3(a).

Section 2(a)(1) of the Code specifies the warnings that are required, and requires

that an accused subjected to custodial interrogation must be given the following

warnings:

> (1) he has the right to remain silent and not make any statement at all and that any statement he makes may be used as evidence against him at his trial;
>
> (2) any statement he makes may be used as evidence against him in court;
>
> (3) he has the right to have a lawyer present to advise him prior to and during questioning;
>
> (4) if he is unable to employ a lawyer, he has the right to have a lawyer appointed to advise him prior to and during any questioning; and
>
> (5) he has the right to terminate the interview at any time.

TEX. CODE CRIM. PROC. ANN. art. 38.22, sec. 2(a)(1)-(5).

The warnings that must be given before an accused's statement, if the product of

custodial interrogation, may be admissible include those announced in *Miranda*

and the warning that the accused has the "right to terminate the interview at

anytime." TEX. CODE CRIM. PROC. ANN. art. 38.22 sec sec 2(a), 3(a)(2);

*Herrera v. State*, 241 S.W.3d 520, 526 (Tex. Crim. App. 2007).

Application of U.S. and Texas Law

Before admitting a statement that is the product of custodial interrogation,

the State has the burden of showing that the defendant knowingly, voluntarily, and

intelligently waived his *Miranda* rights. *Joseph v. State*, 309 S.W.3d 20, 24 (Tex.

Crim. App. 2010). Article 38.22 also states that the accused must indicate that he is

11

waiving those rights knowingly, intelligently, and voluntarily before giving a statement. TEX. CODE CRIM. PROC. ANN. art. 38.22 sec sec 2(a), 3(a)(2); *Herrera*, 241 S.W.3d at 526.

Further, if these warnings are not given to an accused before he is subjected to custodial interrogation, the statement itself must be suppressed. *See Miranda, supra*. Additionally, violation of *Miranda* may also lead to the exclusion of physical evidence derived from the confession. *U.S. v. Patane*, 542 U.S. 630 (2004).

Article 38.23 provides the legal remedy in cases where law enforcement does not comply with the requirements in Article 38.22, or the Constitution or laws of Texas or the United States. Specifically, Article 38.23 unequivocally states that no evidence obtained in violation of the Code of Criminal Procedure, the U.S. Constitution or other laws, or the Texas Constitution or other laws, shall be admitted against the accused in the trial of a criminal case. TEX. CODE CRIM. PROC. ANN. art. 38.23(a).

As previously stated, these protections are afforded to accused citizens who are subject to custodial interrogation. The Supreme Court has held that a person is in "custody" if a reasonable person would believe that she has been deprived of freedom to the degree associated with formal arrest. *Stansbury v. California*, 511 U.S. 318 (1994). When deciding whether a person was in custody for purposes of *Miranda*, a trial court should "(1) conduct a factual review in examining the

circumstances surrounding the interrogation, and (2) make an ultimate legal determination whether a reasonable person would not have felt at liberty to leave." *Thompson v. Koehane*, 516 U.S. 99 (1995).

The next step in the analysis is deciding whether a suspect was "interrogated" according to our laws. In this analysis, questions or comments are considered interrogation if the intent was to elicit an incriminating response. *Rhode Island v. Innis*, 446 U.S. 291 (1980). Regarding whether a defendant was subject to interrogation within the meaning of the Fifth Amendment and *Miranda*, not all types of questioning by law enforcement, even post-arrest, amount to "interrogation." Indeed, courts have exempted routine booking questions as well as "res gestae" statements made by a defendant.[2]

Similarly, for purposes of Texas law, whether a statement was obtained in violation of these provisions depends on whether an accused was subjected to interrogation while in custody. Custodial interrogation is defined as questioning initiated by law enforcement officers after a person has been taken into custody. *See McCulley v. State*, 352 S.W.3d 107, 115 (Tex.App.—Fort Worth 2011, pet ref'd).

---

[2] *See Pennsylvania v. Muniz*, 496 U.S. 582 (1990); *See Sosa v. State*, 769 S.W.2d 909 (Tex. Crim. App. 1989).

<u>Analysis</u>

The examination of the arresting officer, Sergeant Holway, shows that after arresting Petitioner pursuant to an arrest warrant for murder, one of the two offenses for which he was lated convicted and files this Petition, he questioned Petitioner about the circumstances of his location, the identity of the person in whose name Petitioner's hotel room was rented, and the reasoning behind Petitioner's use of a pay phone when he was also in possession of a cellular phone. At trial, the following occurred:

MR. FREDERICKS: As far as the cell phone, did you learn that to be (214) 254-7921?

SERGEANT HOLWAY: Yes. Because I was very curious why - why he had a cell phone on him and he was on a pay phone.

MR. FREDERICKS: Did you ask him?

SERGEANT HOLWAY: Yes.

MR. FREDERICKS: What did he say?

SERGEANT HOLWAY: He said he was talking to his dad in Mexico, trying to get home.

…..

MR. FREDERICKS: Did you ask him about this Nathaniel or Nate Martinez name?

SERGEANT HOLWAY: And he said it was just a friend who rented the room.

5 RR 44-45.

And then on cross examination, Sergeant Holway clarified exactly when he arrested Petitioner:

MR. ALEMAN: And when you - did you arrest him right away after he told you he was Edgar?

SERGEANT HOLWAY: No. I - I asked him if he was Edgar Romo, and he said yes. Then I arrested him.

5 RR 49.

In light of this exchange, it is clear that Petitioner was placed under arrest, and therefore in custody for our purposes, the moment he confirmed to Sergeant Holway that he in fact was Edgar Romo. Thus, at that point, any questioning by law enforcement intended to elicit an incriminating response qualifies as interrogation. Before the product of any custodial interrogation may be admitted, it must be shown that the accused was informed of his rights pursuant to U.S. and Texas law, that he expressly waived those rights, that he did so knowingly, intelligently, and voluntarily, and said waiver must be included in the recorded or written statement. More than that, all of these things must be shown in a criminal proceeding before the attendant statement becomes admissible. Because none of these legal requirements were met, the above-referenced statements was unlawfully admitted.

Petitioner recognizes that according to current precedent[3], his complaint about the admission of his unwarned post-arrest statement, the product of custodial

---

[3] *Ex parte Bagley*, supra.

15

interrogation, is forfeited because he did not object at trial, and therefore is not available for review on appeal. Still, an exception to this general rule exists for fundamental error" which may be complained-about for the first time on appeal. TEX. R. EVID. 103(d); *Mendez v. State*, 138 S.W.3d 334, 341 (Tex. Crim. App. 2004). Petitioner urges this Court to reexamine the caselaw and apply this exception to the unlawful admission of post-arrest statements, the products of custodial interrogation, where the State did not obtain an express waiver of rights nor properly prove an express waiver of rights in a criminal proceeding in accordance with U.S. or Texas law. Put another way, Petitioner urges this Court to include the constitutional protection against admission of unwarned post-arrest statements, when produced by custodial interrogation absent an express waiver of rights, in the list of rights which must be affirmatively and expressly waived.

This Court has held that there are three groups of appealable errors: (1) violation of forfeitable rights, which must be preserved for appeal by timely and specific objection; (2) violation of rights that must be expressly waived, which may be vindicated on appeal in the absence of such a waiver; and (3) violation of a systemic prohibition or requirement not optional with the parties at trial, which may always be remedied on appeal, regardless of waiver or forfeiture. *See Marin v. State*, 851 S.W.2d 275, 278-80 (Tex. Crim. App. 1993). Indeed, most errors fall into the first category of forfeitable rights. *See Fuller v. State*, 253 S.W.3d 220, 232 (Tex. Crim. Ap. 2008). And this Court held long ago that in order to complain

16

about the admissibility of a confession within the framework of *Miranda*, a defendant must object to its admission at trial. *Bagley*, 509 S.W.2d at 333.

First, it should be noted that the facts in the instant case are markedly different than those in *Ex Parte Bagley*. For example, in *Bagley*, the defendant was actually given a list of warnings two times before he gave a statement - the problem in that case was that the list of warnings did not include on particular warning - that the suspect had the right to have counsel present during the interview. Further, Mr. Bagley did not raise the issue on appeal or in his first habeas petition. Here, Sergeant Holway did not bother to warn Petitioner of his rights, record the statement, and of course he didn't seek an express waiver of those rights because he chose not to inform the suspect of any rights at all. Second, this complaint was raised by Petitioner in his direct appeal just as he raises it in this Petition.

Petitioner urges this court to reconsider the classification of an improperly admitted confession as a forfeitable right and instead moves this Court to find that an unlawfully admitted post-arrest statement, when produced by custodial interrogation, is instead a right that must be expressly waived and which may be vindicated on appeal regardless of whether it was properly preserved by objection at trial.

This Court has recognized various different types of fundamental error over the years. First, rights that have been found to be non-waivable and non-forfeitable

include the right to be tried for a felony offense in a district court and the right that commands a juvenile court have jurisdiction over a juvenile unless and until that court relinquishes jurisdiction over him. *See Garcia v. Dial*, 596 S.W.2d 524 (Tex Crim. App. 1980); *See Ex Parte Stanley*, 703 S.W.2d 686 (Tex. Crim. App. 1986). Second, some of the rights that must be expressly waived and cannot be forfeited by inaction alone include the right to counsel, the right to a trial by jury, the right to the statutorily-established 10 days to prepare for trial after indictment, and the right to be admonished upon a plea of guilty. *See Holloway v. State*, 780 S.W.2d 787 (Tex. Crim. App. 1989); *See Hobbs v. State*, 298 S.W.3d 193 (Tex. Crim. App. 2009); *See Marin v. State*, 851 S.W.2d 275 (Tex. Crim. App. 1993); *See Sims v. State,* 326 S.W.3d 707 (Tex. Crim. App. 2010).

The right that an accused not be required to give evidence against himself unless he is properly warned of the consequences of giving up that right in connection with custodial interrogation rises to the level of fundamental error and should be included in the list of rights that are not extinguished by inaction alone. Petitioner urges this Court to find that these rights must be expressly waived and failing that constitute fundamental error because a statement by a defendant is a particularly damaging piece of evidence which must be afforded utmost protection, the procedural requirements for admission are nearly identical to those for other rights that must be expressly waived, and the admission of such a statement causes

egregious harm, especially when it is repeatedly emphasized by the prosecuting attorney during closing argument.

In *McCarthy v. State*, this Court reversed and remanded because investigators violated that defendant's Fifth Amendment rights when they reproached her in order to obtain a statement. *See McCarthy*, 65 S.W.3d 47 (Tex. Crim. App. 2001). Citing to *Fulminante v. Arizona*[4], this Court wrote about the critical nature and evidentiary value of a defendant's statement. Specifically, this Court noted that "a Defendant's statement, especially a statement implicating her in the commission of the charged offense, is unlike any other evidence that can be admitted against the defendant… (it) is probably the most probative and damaging evidence that can be admitted against him." *Id*. at 55-56. This Court went on to write that, "Certainly, confessions have a profound impact on the jury, so much so that we may justifiably doubt its ability to put them out of mind even if told to do so." *Id*. at 56. In *McCarthy*, just like in this case, the statement did not "place the murder weapon in her own hands" but in both cases the statements were repeatedly emphasized by the State during closing argument. In the instant case, Petitioner's statement was used by the State during closing argument to paint the Defendant as the only one who did not visit the complainant at the hospital, and argue that he must be guilty because instead of visiting the complainant at the hospital, he was on the phone with his father, who was living in Mexico, and he was "trying to get

_____

[4] 499 U.S. 279 (1991).

home." Furthermore, this allowed the State to repeatedly argue that Petitioner's statements revealed a consciousness of guilt in that, in addition to attempting to flee the country, he was trying to conceal this conversation with his father by using a pay phone despite being in possession of a working cellular phone. Besides this statement, the main piece of evidence was the identification by the complainant but her testimony was somewhat discredited because she suffered great trauma and fading eyesight due to the shooting.

Further demonstrating how valuable such evidence can be, the legal remedy when the State fails in any way to obtain an express waiver of rights prior to a custodial interrogation, include that waiver of rights in the written or recorded statement, and prove that the express waiver was given knowingly, voluntarily, and intelligently is that the statement is inadmissible. Here, the statements should have been inadmissible, but because they were snuck in relatively quickly and defense counsel at trial did not object, the unwarned statements were put before the jury despite there being no express waiver or recording during this custodial interrogation.

Furthermore, when examining the procedural requirements associated with the Fifth Amendment Right to Counsel and the proper admission of a defendant's statement made during custodial interrogation, it becomes clear that these requirements - that the defendant be advised of his rights, that he enter an express waiver of those rights, that he expressly waive these rights knowingly, voluntarily,

20

and intelligently, that any oral statement be recorded, that he enter any such waiver on that same recording, and that all of this be proven during a criminal proceeding or the statement is not admissible - are strikingly similar to the requirements associated with other rights that must be expressly waived. For example, the requirement that such an express waiver be executed knowingly, voluntarily, and intelligently is nearly identical to what is required before a defendant may lawfully waive the right to a jury trial and enter a plea of guilty. That the express waiver must be proven as a part of the criminal proceeding is also very similar to waiving a jury trial in that executing documents to that effect is not sufficient - the waiver must take place on the record during a criminal proceeding.

Finally, an error of this magnitude constitutes egregious harm. The admission of this statement, given hours after the shooting, is incredibly valuable evidence in the State's case in chief. The details of the statement - an attempt to flee the country, actively making arrangements to do so with a close family member, his father, and efforts to conceal the phone call and conversation by use of a pay phone despite having a working cellular phone in his pocket - all speak volumes and provided the State with very powerful circumstantial evidence. This is no doubt an undisputed contention given how many times this statement and its contents were emphasized during the State's closing argument.

For all of these reasons, this case should be reversed and remanded to the Court of Appeals for further consideration on the substantive merits of Petitioner's point of error.

**PRAYER FOR RELIEF**

Petitioner respectfully prays that this Court grant discretionary review, reverse this case, and remand it to the Court of Appeals for consideration on its merits, and for any other relief to which he may be entitled.

**Respectfully submitted**:

**/s/ George J. Parnham**

_____
**GEORGE J. PARNHAM**
TBN: 15532000

PARNHAM & ASSOCIATES
440 Louisiana Street, Suite 200
Houston, Texas 77002
713-224-3967
713-224-2815
*Attorneys for Appellant*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 17th day of June, 2015 a true and correct copy of the foregoing Petition for Discretionary Review was mailed to the Collin County

District Attorney at 2100 Bloomdale, Suite 100, McKinney, Texas 75071 via First Class U.S. Mail.

/s/ George J. Parnham

_____

**GEORGE J. PARNHAM**

## CERTIFICATE OF COMPLIANCE

I hereby certify that the petition filed in this case number complies with the requirement of TEX. R. APP. 9.4(i)(3). According to the computer program used to prepare this document, this Petition has the following number words: 3,774, including footnotes.

/s/ George J. Parnham

_____

**GEORGE J. PARNHAM**

**Affirmed and Opinion Filed April 17, 2015**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

No. 05-13-00546-CR

No. 05-13-00547-CR

**EDGAR ALBERTO ROMO, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 199th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause Nos. 199-82866-2012 and 199-81976-2011**

# MEMORANDUM OPINION

Before Justices Fillmore and Schenck[1] and Chief Justice Thomas, Retired[2]
Opinion by Chief Justice Thomas, Retired

A jury found Edgar Alberto Romo guilty of murder and aggravated assault against a household member. The trial court assessed his punishment at life in prison for both offenses. On appeal, Romo challenges the sufficiency of the evidence to support the jury's verdict as well as a number of the trial court's evidentiary rulings. Because the issues in this appeal involve the application of well-settled principles of law, we issue this memorandum opinion. *See* TEX. R. APP. P. 47.4. We affirm the trial court's judgments.

---

[1] Justice David Schenck succeeds Justice Michael O'Neill, a member of the original panel. Justice Schenck has reviewed the briefs and record in this case. *See* TEX. R. APP. P. 41.1(a).

[2] The Honorable Linda Thomas, Chief Justice of the Court of Appeals for the Fifth District of Texas—Dallas, Retired, sitting by assignment.

## Background

Ismael Torres owned a house in Plano, Texas; he lived in that house with his girlfriend, Leticia Romo. At different times, various members of Ismael's and Leticia's families lived with them in the home. (For clarity, we will refer to the various family members by their first names.) On June 17, 2011, Ismael's daughter, Gabriela, and her boyfriend, Luis, lived there; Leticia's son, Alex, lived there too. Leticia's older son, appellant Romo, had lived with these individuals until a few months earlier, when he moved out of the house and into a motel.

Ismael, who had been employed for years building fences, had helped Romo obtain a job building fences as well. On the morning of June 17, Romo injured his finger at work and left early. He stopped to get lunch for himself and his brother and brought it to the Plano house. The brothers ate and planned to play basketball later in the day; Romo showered, changed clothes, and—according to Alex's testimony—left the house.

Ismael returned home from work later in the afternoon. After resting, he and Gabriela sat together in the living room listening to music. Gabriela testified that she could hear the brothers talking and watching television in Alex's bedroom. She testified that Romo walked into the living room, pointed a gun at her, and said he was going to kill them. Then he shot her and turned and shot Ismael.

Alex was frightened when he heard the shots, but after several minutes he came into the room, and Gabriela asked him for help. He testified he first tried to call 911 from her phone in the living room, and then from his own phone. Finally, the 911 operator called him back. Emergency personnel and police officers were sent to the house shortly before six o'clock. When they arrived at the house, Alex was waiting for them outside. One officer testified Alex told him his brother had "done this." A second officer testified Alex later indicated to her that he was afraid Romo might have done it. At trial, Alex denied making either of those statements.

–2–

In the house, police found Gabriela was conscious and asking for help, but Ismael was already dead. One officer asked Gabriela who had shot her, and she named Romo by both first and last names. A second officer who spoke Spanish arrived and spoke to Gabriela; she repeated to him that Edgar Romo had shot her. The officer went to the hospital and spoke to Gabriela again there. Once again, she identified Romo as the person who shot her, and she gave the police a description of him, his clothing, and the car he was driving.

The police obtained an arrest warrant for Romo, and Sergeant Terence Holway came upon Romo at approximately eleven o'clock that night. Romo was talking on a pay phone close to the North Dallas motel where he had been staying. Holway asked Romo if he was Edgar Romo, and when Romo said yes, Holway arrested him. Romo was brought to the police station, where he was interviewed by Detective Charles Marks. In connection with the interview, the State's gunshot residue expert, Anne Koettel, tested Romo's hands. She found gunshot residue on the band-aid on Romo's injured finger. She also found particles "consistent with" gunshot residue on his hands.[3] Koettel testified she also found gunshot residue on the hands of Ismael, Gabriela, and Alex.

The State offered evidence that Romo's cell phone was in the vicinity of the Plano house shortly after noon. It was in the vicinity of his North Dallas motel from approximately two thirty until four o'clock. Then, shortly after four thirty, the phone was again in the vicinity of the Plano house. Only after seven o'clock was the phone located close to his sister Rosa's Dallas apartment, where Romo contends he spent most of the afternoon and evening. The State also offered evidence that Romo's phone contained a string of text messages indicating his attempt to purchase 45 caliber ammunition, the size used in the shooting of Ismael and Gabriela.

---

[3] Koettel explained that a particle containing antimony, barium, and lead is considered characteristic of gunshot residue. A particle containing only two of those elements is considered "consistent with" gunshot residue.

**Sufficiency of the Evidence**

In issue three, Romo contends the evidence is insufficient to support his convictions for murder and aggravated assault. A person commits the offense of murder if he intentionally or knowingly causes the death of an individual or intends to cause serious bodily injury and commits an act clearly dangerous to human life, which causes the death of an individual. TEX. PENAL CODE ANN. § 19.02 (West 2011). A person commits the aggravated assault charged in this case if he intentionally, knowingly, or recklessly causes bodily injury to a person living (or who has lived) in the same household, while using or exhibiting a deadly weapon. *Id.* §§ 22.01(a)(1) (West Supp. 2014), 22.02(a)(2) (West 2011). Romo specifically challenges the sufficiency of the evidence that it was he who shot and killed Ismael and who shot and injured Gabriela.[4]

We review this challenge by examining the evidence in the light most favorable to the prosecution to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The jury exclusively determines the credibility of the witnesses and the weight to be given their testimony. *Wise v. State*, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012). Our duty is to ensure that the evidence presented supports the jury's verdict and that the State has presented a legally sufficient case of the offense charged. *Montgomery v. State*, 369 S.W.3d 188, 192 (Tex. Crim. App. 2012). Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). We use the same sufficiency standard of review for both circumstantial and direct evidence cases. *Id.*

---

[4] The parties concede the same person shot both Ismael and Gabriela.

–4–

The State relies first and foremost on Gabriela's identification of Romo as the person who shot her. The evidence indicates she consistently identified Romo as the shooter both at the house and at the hospital. Gabriela's trial testimony was consistent with her earlier statements: she identified Romo as the shooter; she described him standing and pointing the gun at her; she stated she did not have time to say anything to him; she just turned and looked right at him, and he fired. When asked if she was sure it was Romo, she answered "Yes. I saw him."

Romo challenges Gabriela's identification based upon her condition after the shooting. He challenges her ability to think clearly given the trauma she experienced. The significance of her injuries was reported by her treating physician in the emergency room, Doctor James Frame. Romo also points to a different identification reported by Frame, who testified he recalled Gabriela naming "Bernadette" or "Bernabrene" as the shooter. Frame also remembered Gabriela describing a fight in her "apartment" involving "a love triangle." The record established that Gabriela's estranged husband was named Bernabe. But Frame's records did not include any of this identification, and he acknowledged he was testifying from his memory. In fact, the records from which Frame testified at trial contained only the name "Jane Doe," and the date of birth in those records did not match Gabriela's.

The State also offered circumstantial evidence of Romo's identity as the shooter. Cell phone records indicated his phone was near the Plano house close to the time of the shooting and that he had agreed to purchase ammunition matching that used in the shooting. Romo argues there is no evidence he was using the phone at either of those points in time. The State also offered evidence that gunshot residue was found on the band-aid on Romo's finger. Romo points to testimony indicating residue can be transferred by contact in such places as a police car or police station. He stresses that Alex's hands contained more residue than his own.

The jury considered all this evidence. It heard both Frame's and Gabriela's testimony and determined the weight to give their identifications. Likewise, the jury heard the circumstantial evidence of identity and decided the weight to give it. *See Wise*, 364 S.W.3d at 903 (jury exclusively determines weight to be given witnesses' testimony). We conclude a rational jury could have found beyond a reasonable doubt that Romo was the person who committed the murder and the aggravated assault in this case. *See Jackson*, 443 U.S. at 319.

We overrule Romo's third issue.

### Evidentiary Issues

Romo's remaining issues challenge trial court rulings admitting, excluding or publishing evidence. We review such rulings for an abuse of discretion. *McDonald v. State*, 179 S.W.3d 571, 576 (Tex. Crim. App. 2005). If the trial judge erred in determining the admissibility of evidence offered by the State, this error must have been preserved by a specific, timely objection and a ruling on that objection. *Martinez v. State*, 98 S.W.3d 189, 193 (Tex. Crim. App. 2003). "In fact, almost all error—even constitutional error—may be forfeited if [Romo] failed to object." *Fuller v. State*, 253 S.W.3d 220, 232 (Tex. Crim. App. 2008).

In his first two issues, Romo argues the trial court abused its discretion by admitting statements made by Romo after he was arrested, but before police advised him of his rights under the Fifth Amendment to the United States Constitution and article 38.22 of the Texas Code of Criminal Procedure. The statements at issue were made to the arresting officer, Sergeant Holway, who had come upon Romo while the latter was talking on a pay phone. After arresting Romo, Holway discovered Romo was carrying a cell phone. Curious, the sergeant asked Romo about his use of the pay phone. Romo replied that "he was talking to his dad in Mexico, trying to get home." Romo argues the State stressed his statement at trial to establish his consciousness of guilt by implying Romo was intending to flee Texas.

–6–

Romo concedes that his counsel raised no objection at trial to the State's use of his words against him. He concedes as well that settled Texas law requires such an objection in order to complain on appeal about the admissibility of statements within the framework of *Miranda*.[5] *See Ex parte Bagley*, 509 S.W.2d 332, 333 (Tex. Crim. App. 1974). Nevertheless, Romo urges this Court to reconsider this rule and to hold that self-incrimination protections rise to the level of fundamental rights, which may be raised for the first time on appeal. As an intermediate court, this Court is not free to disregard the decisions of the Court of Criminal Appeals. We decline Romo's invitation to do so. We conclude Romo did not preserve error on his first and second issues; we overrule them.

In his fourth issue, Romo contends the trial court erroneously admitted irrelevant character evidence concerning his prior arrests. He argues the evidence encouraged the jury to find him guilty because he was a bad person rather than on competent evidence of the offense charged. The complained-of testimony was elicited during the following exchange between Romo's counsel and Sergeant Holway:

| | |
|---|---|
| Defense Counsel: | You were asked to search for Edgar Romo. Correct? |
| Holway: | Correct. |
| Defense Counsel: | What description were you given to look for to try to find him? |
| Holway: | He gave us a physical description plus photographs from previous, um, arrests. |

Romo may not complain of testimony that he elicited on cross-examination. *Ingham v. State*, 679 S.W.2d 503, 507 (Tex. Crim. App. 1984). Once the witness volunteered the testimony concerning previous arrests, defense counsel could have objected to it as nonresponsive. No

---

[5] *See Miranda v. Arizona*, 384 U.S. 436 (1966).

objection was lodged in the trial court, so we have no ruling to review. We overrule Romo's fourth issue.

In his fifth issue, Romo argues the trial court abused its discretion by allowing the State to publish evidence containing audio of him invoking his right to counsel. After he was arrested, Romo agreed to give a statement to police; the interview was recorded. In the course of the interview, the officer discussed Romo's undergoing a test for gun-shot residue and, Romo contends, he asked for counsel at that time. Again, Romo concedes that his counsel failed to object to the publication of the recording at trial, but he contends the publication was fundamental error. We disagree. Allowing a jury to hear that the defendant invoked his right to counsel is not fundamental error. *See Reyes v. State*, 267 S.W.3d 268, 273 (Tex. App.—Corpus Christi 2008, pet. ref'd); *Cacy v. State*, 901 S.W.2d 691, 699 (Tex. App.—El Paso 1995, pet. ref'd). Romo has preserved nothing for our review in this issue. *Rezac v. State*, 782 S.W.2d 869, 871 (Tex. Crim. App. 1990). We overrule his fifth issue.

In his sixth issue, Romo contends the trial court abused its discretion by admitting evidence of Ismael's alleged good character for peacefulness. Evidence of the character of a victim is ordinarily not admissible to show action in conformity with that character. An exception exists for "evidence of a character trait of peacefulness of the alleged victim offered by the prosecution in a homicide case to rebut evidence that the alleged victim was the first aggressor." TEX. R. EVID. 404(a)(2). However, as Romo points out, his theory of the case was not that Ismael had attacked him first. Instead, Romo's defense was that someone else fired the shots that killed Ismael and injured Gabriela. The exchange of which Romo complains took place between the prosecutor and the lead detective on the case, Detective Charles Marks:

> Prosecutor: Detective, are you aware of any – did you run down other suspects, other possible leads in this case, during your investigation?

Marks:　　　　　Traditionally, we explore any possibility or any lead that's made available to us. An example would be other like offenses occurring in the Metroplex, and there was not. So no leads were accepted from that. No one ever offered any other possible suspect. We were only told that Mr. Torres had no enemies, was not confrontational, and did not live a lifestyle that would encourage something like this to happen to him. So no other leads were really available.

In context, we question whether Marks's response was really a declaration of Ismael's character for peacefulness or merely one of a number of circumstances that failed to provide the police with leads on other suspects. Nevertheless, we need not make that determination because Romo did not lodge an objection to Marks's response. He has forfeited any complaint on this issue. *See Fuller*, 253 S.W.3d at 232. We overrule issue six.

In his seventh issue, Romo contends the trial court's limitation of his expert's testimony denied him his right to present a defense. Romo states that his expert, Dr. Ron Fazio, "was called to suggest that the gunshot residue test results were open to interpretation and ultimately inconclusive with respect to any perceived link between Romo with the commission of the crime." Romo argues Fazio was unable to voice these opinions, but he does not focus his briefing on particular questions or objections so that we can identify the specifics of his complaint. Instead, he quotes excerpts from approximately fourteen pages of the record.[6] Within those pages, the State objected to Fazio's testimony nine times: three objections were sustained, two were overruled, and four directed Romo's counsel to rephrase his question in some fashion.

If we focus on the three objections that were sustained, we cannot say that Romo's defense was compromised. The State raised all three objections during exchanges between Romo's counsel and Fazio concerning the gunshot residue found on the hands of Alex Romo. In

---

[6] Appellant's quotes begin on page 88 of Volume 6 of the Reporter's record; the final quote is from page 101 of that volume.

the first two instances, the State objected to questions asking Fazio (1) whether it was more likely Alex had fired a firearm or was near a firearm than Edgar, and (2) his interpretation of the amount of gunshot residue found on Alex's hands. In both instances, the State contended the questions fell outside Fazio's realm of expertise, and the trial court agreed. However, after these rulings, Romo's counsel spent more than six pages of the record developing Fazio's background and experience more fully. He was then permitted—over objection by the State—to ask whether Fazio could rule out accidental transfer of gunshot residue particles on Alex's hands; Fazio responded that he could neither rule out nor prove accidental transfer. Only when the expert deviated into a discussion of "characteristic particles" did the trial court sustain the third objection, which was to non-responsiveness of the answer.

From this point in the examination, Romo proceeded to elicit testimony from Fazio that the State's residue findings indicate that Alex was near a firearm or fired one. The trial court then permitted Fazio to expand on how he interpreted the residue findings. Asked whether Alex's test results were consistent with someone holding a gun in two hands, Fazio testified (again over objection):

> I can't answer that. The – I wasn't – the nature of gunshot residue testing is not specific like that. That transfer could be from just being in the presence; it could be from handling something that was in the presence. Um, the fact that there was nothing found on the palms could be caused by the fact that it's around, but it's not indicative or consistent or it – it – it is what it is.

Through follow-up questions, Fazio was permitted to testify as to the likelihood that Alex's results were caused by picking up a cell phone: "I wouldn't imagine so. You would expect, if there's a transfer from a cell phone to the hands, it would be on the fingers, and possibly the palm. I don't see how you get it on the back [of the hand]." Similarly, when asked whether Alex could have gotten the residue from a doorknob, Fazio stated:

–10–

> Again, I -- I -- there are no hard facts with gunshot residue, but I – I'd have a hard time understanding how particles would get on the back of the hand if you're handling something that has gunshot residue on it.

We conclude that after his credentials were sufficiently explained, Fazio testified at some length as to his interpretation of Alex's gunshot residue test results. Romo was able to make his point that the residue tests could support an inference that Alex was the shooter rather than Romo.

These are the only objections identified with sufficient specificity to allow our review. We conclude Romo was able to offer testimony satisfying his purpose in calling Fazio, i.e., establishing that the test results were open to interpretation and that they did not necessarily point conclusively to Romo as the shooter. Accordingly, Romo was not prevented from presenting this portion of his defense to the jury.

We overrule the seventh and final issue.

## Conclusion

We have decided each of Romo's issues against him. Accordingly, we affirm the trial court's judgments.

Do Not Publish
TEX. R. APP. P. 47
130546F.U05

/Linda Thomas/
_____
LINDA THOMAS
CHIEF JUSTICE, RETIRED

–11–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

EDGAR ALBERTO ROMO, Appellant

No. 05-13-00546-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 199th Judicial District Court, Collin County, Texas
Trial Court Cause No. 199-82866-2012.
Opinion delivered by Chief Justice Thomas, Retired. Justices Fillmore and Schenck participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered April 17, 2015.



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

EDGAR ALBERTO ROMO, Appellant

No. 05-13-00547-CR      V.

THE STATE OF TEXAS, Appellee

On Appeal from the 199th Judicial District Court, Collin County, Texas
Trial Court Cause No. 199-81976-2011.
Opinion delivered by Chief Justice Thomas, Retired. Justices Fillmore and Schenck participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered April 17, 2015.