**DISSENT and Opinion Filed October 3, 2019**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

No. 05-18-00870-CR
No. 05-18-00871-CR
No. 05-18-00872-CR

**THE STATE OF TEXAS, Appellant**

**V.**

**KEVIN CASTANEDANIETO, Appellee**

**On Appeal from the Criminal District Court No. 6**
**Dallas County, Texas**
**Trial Court Cause Nos. F17-57212-X, F17-57213-X & F17-18-00407-X**

## DISSENTING OPINION

Opinion by Justice Bridges

I withdraw my October 2, 2019 dissenting opinion. This is now my dissenting opinion.

This State's appeal involves whether the trial court properly granted appellee's motion to suppress a second videotaped oral statement to police. Appellee presented two arguments to the trial court supporting suppression: (1) appellee's first confession to police was involuntary because he did not understand his *Miranda* rights; therefore, his second confession was tainted; and (2) officers violated his Sixth Amendment right to counsel by conducting the second interview. Because the record establishes sufficient attenuating circumstances between the confessions to remove any alleged taint, the trial court abused its discretion by suppressing appellee's second confession. Accordingly, I would reverse the trial court's order and remand for further proceedings. I respectfully dissent from the majority opinion.

**Background**

Appellee was arrested on August 10, 2017 for four aggravated robberies arising from two criminal episodes involving different victims. He was indicted on three charges in which he allegedly exhibited a handgun while in the course of committing theft.

At approximately 3:00 a.m. on August 10, 2017, Detective Thayer[1] advised appellee of his *Miranda* rights and conducted a custodial interview. Detective Thayer then interviewed appellee for approximately twenty-two minutes. Appellee admitted consuming alcohol, marijuana, and cocaine prior to the crime spree and claimed not to remember some details. He admitted to touching a gun and firing it once in the air, but denied ownership of the gun or shooting it toward a white truck. He recalled stealing two cell phones from two women at different apartment complexes, but he threw them away. At the end of the interview, Detective Thayer explained appellee would appear before a judge who would talk to him and explain the charges. Detective Thayer reiterated appellee could obtain a lawyer.

A magistrate arraigned appellee at 7:36 p.m. that evening. Appellee requested a court-appointed attorney.

On August 11, 2017, at 12:21 p.m., the trial court appointed counsel; however, counsel declined the appointment. The record does not indicate the time counsel declined the appointment. Around "dinnertime," Detective Olegario Garcia transported appellee from jail to the police station for questioning. Detective Garcia removed appellee's handcuffs and let him eat food from McDonald's before the interview. Appellee received *Miranda* warnings again and willingly participated in the interview.

Appellee's counsel, who accepted the appointment on August 14, 2017, filed an omnibus pretrial motion requesting, among other things, a hearing prior to the introduction of any

---

[1] His full name is not reflected in the record.

–2–

statements allegedly made, either orally or in writing, "to determine the admissibility of same," citing Texas Code of Criminal Procedure articles 38.22 and 38.23.

During the suppression hearing, the State communicated it was offering only the second confession and not the first confession. Appellee, however, argued suppression of the second interview was appropriate because (1) the second interview was inadmissible based on taint from the first interview in which he involuntarily waived his *Miranda* rights, and (2) Detective Garcia violated his Sixth Amendment right to counsel. The State again emphasized it was not trying to admit or rely on the first interview because appellee admitted he consumed alcohol and drugs earlier in the evening. Rather, the State sought to admit the second interview, which appellee voluntarily participated in after any effects of the drugs had worn off.

At the conclusion of the hearing, the trial court recessed and resumed the following day. The record does not contain an order on appellee's motion to suppress prior to the recess; however, the trial court clearly granted it in light of the trial court reconvening the following day to consider the State's motion to reconsider. Following further arguments from both sides, the trial court orally granted the motion to suppress and signed an order.

**Standard of Review**

A trial court's denial of a motion to suppress is reviewed under a bifurcated standard of review. *Brodnex v. State*, 485 S.W.3d 432, 436–37 (Tex. Crim. App. 2016). We afford almost complete deference to the trial court's determination of historical facts, "especially if those are based on an assessment of credibility and demeanor." *Crain v. State*, 315 S.W.3d 43, 48 (Tex. Crim. App. 2010). However, when, as here, we have a videotape of the confessions and an uncontroverted version of events, we review the trial court's ruling on an application of law to facts de novo. *See Carmouche v. State*, 10 S.W.3d 323, 332 (Tex. Crim. App. 2000) (refusing to turn a blind eye to videotape evidence presenting "indisputable visual evidence" contradicting

–3–

portions of officer's testimony when evidence in videotape did not "pivot 'on an evaluation of credibility and demeanor'"); *see also Nunez v. State*, No. 05-08-00711-CR, 2009 WL 1677821, at *3 (Tex. App.—Dallas June 17, 2009, pet. ref'd) (not designated for publication); *Herrera v. State*, 194 S.W.3d 656, 659 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd). When, as in this case, the trial court does not make express findings of fact, we view the evidence in the light most favorable to the trial court's rulings and assume it made implicit findings supported by the record.[2] *Brodnex*, 485 S.W.3d at 436. We sustain the trial court's decision if we conclude the decision is correct under any applicable theory of law. *Id.* at 437.

## Voluntariness of the Confessions

The State has the burden of showing that a defendant knowingly, intelligently, and voluntarily waived his *Miranda* rights. *See Miranda v. Arizona*, 384 U.S. 436, 444, 475 (1966); *Joseph v. State*, 309 S.W.3d 20, 24 (Tex. Crim. App. 2010). The State must prove waiver by a preponderance of the evidence. *Joseph*, 309 S.W.3d at 24. "A valid waiver will not be presumed simply from the silence of the accused after warnings are given or simply from the fact that a confession was in fact eventually obtained." *Miranda*, 384 U.S. at 475. But a waiver need not assume a particular form and, in some cases, a "waiver can be clearly inferred from the actions and words of the person interrogated." *Joseph*, 309 S.W.3d at 24–25 (quoting *North Carolina v. Butler*, 441 U.S. 369, 373 (1979)).

The question, however, is not whether appellee "explicitly" waived his *Miranda* rights, but whether he did so knowingly, intelligently, and voluntarily. *Id.* at 25. To evaluate whether appellee knowingly, intelligently, and voluntarily waived his *Miranda* rights, a reviewing court

---

[2] Because the majority agrees with the trial court's implicit finding that appellee's statements were involuntary, we need not abate the appeal for the mandatory findings required pursuant to Texas Code of Criminal Procedure, article 38.22, section 6. *See* TEX. CODE CRIM. PROC. ANN. art. 38.22, § 6 ("In all cases where a question is raised as to the voluntariness of a statement of an accused, the court must make an independent finding . . . as to whether the statement was made under voluntary conditions."); *see also State v. Perez*, No. 14-16-00690-CR, 2017 WL 5505855, at *9 (Tex. App.—Houston [14th Dist.] Nov. 16, 2017) (mem. op., not designated for publication) (concluding article 38.22 requires trial court to file findings and conclusions "*only if* it decides that the statement is voluntarily made") (emphasis added).

determines whether (1) the relinquishment of the right was voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception, and (2) the waiver was made with full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. *Id*. (citing *Moran v. Burbine*, 475 U.S. 412, 421 (1986)). Only if the "totality of the circumstances surrounding the interrogation" reveals both an uncoerced choice and the requisite level of comprehension may a court properly conclude that a defendant waived his *Miranda* rights. *Id*. The "totality-of-the-circumstances approach" requires the consideration of "all the circumstances surrounding the interrogation," including the defendant's experience, background, and conduct. *Id*.

The videotape reveals that after Detective Thayer gave appellee *Miranda* warnings, the following exchange occurred:

> Thayer: Do you understand the rights I have read to you?
>
> Appellee: (waves his hand sideways)
>
> Thayer: A little bit. Ok. Well.
>
> Appellee: It's 'cause [sic] I don't, I don't speak a lot of English.
>
> Thayer: Do you, can you read Spanish?
>
> Appellee: Yes.
>
> Thayer: Read that for me and tell me if you understand.
>
> Appellee: (reads the *Miranda* warnings aloud in Spanish)
>
> Thayer: Ok do you understand?
>
> Appellee: (shakes head affirmatively)
>
> Thayer: Ok. Are you willing to talk to me try to figure this all out?
>
> Appellee: Which one? It's 'cause [sic] I don't understand.
>
> Thayer: Let's talk about what happened last night.
>
> Appellee: Yes, sir.

Detective Thayer then continued with the interview for approximately twenty-two minutes. During the interview, appellee conceded he made bad decisions but stated, "I'm telling you the truth" and "let me tell you the truth" when Detective Thayer asked him about the events of the evening.[3]

The majority emphasizes Detective Thayer's "declarative statements" and "gestures" to reinforce its conclusion that appellee did not fully comprehend his rights or consequences of abandoning them. Chastising the officer for using a declaratory sentence when questioning a suspect is adding a layer of review unsupported by Texas case law. Whether Detective Thayer "was authoritative, using gestures" during the interview might be relevant to our inquiry if appellee had argued, which he did not, that his confession was the result of coercion, intimidation, or deception. Regardless, Detective Thayer did not raise his voice or physically intimidate appellee in any way. Nothing in his demeanor or tone reflects intimidation. More importantly, the majority fails to explain how Detective Thayer's statements directing appellee that they "were gonna have a conversation, be truthful with each other" reveals appellee's lack of understanding of his *Miranda* rights.

The majority concludes Detective Thayer went "through the motion of providing *Miranda* warnings" but failed to "elicit any verbal or non-verbal assent." However, the "indisputable visual

---

[3] During the suppression hearing, it appears appellee's counsel played only the first four minutes of the first interview. He replayed the portion of the video where appellee said, "I don't understand," and said, "We can stop it there. I rest." The following exchange then occurred:

Court: Okay. The question was, "You want to talk to me?" "I don't understand."

Defense: Yes, sir.

State: The question actually was, "You willing to talk to me and try to figure this all out?" He says, "It's because I do not understand."

Court: "Because I do not understand."

Defense: Does not understand.

Court: Uses the word "because?"

State: He says, "It's 'cause.'"

Court: "It's 'cause."

State: After the question, "Do you understand?" Then he nods in the affirmative. Then it's the "figure out" part.

Court: Okay.

evidence" confirms that when Detective Thayer asked appellee if he understood his *Miranda* rights, appellee nodded affirmatively. *See Carmouche*, 10 S.W.3d at 332 (refusing to turn a blind eye to indisputable video evidence); *see also Montanez v. State*, 195 S.W.3d 101, 113 (Tex. Crim. App. 2006) (Johnson, J., dissenting) (noting a trial court can glean demeanor and assess credibility from language and tone of witnesses during the suppression hearing, but videotapes are a different matter as "they are what they are" and an appellate court "is in no worse position to determine fact issues presented by the tape than is a trial court"). To the extent appellee verbalized he did not understand after Detective Thayer asked him if he was "willing to talk . . . to figure this all out," the record is unclear about what appellee did not understand. However, the trial court could not have implicitly found appellee involuntary waived his *Miranda* rights because he did not understand English. The trial court asked at the beginning of the suppression hearing if appellee needed an interpreter, and defense counsel answered, "No, it's not that bad, Judge." Appellee's counsel emphasized during the hearing, "we're not talking about a language barrier. We're talking about whether or not the defendant understands his rights and the consequences of waiving them." Further, Detective Garcia testified he did not have any issues communicating with appellee in the second interview. The videotape of the second interview confirms his testimony. In fact, Detective Garcia testified appellee used the slang word for gun (a "strap") during the interview, which indicated he was "ingrained into the culture of the United States."

I recognize our review of the video is somewhat limited because in answering the issue of knowing and voluntary waiver we must consider Detective Thayer's demeanor in asking the questions and appellee's demeanor in answering those questions. *See, e.g., Armendariz v. State*, No. 08-13-00125-CR, 2015 WL 2174481, at \*4 (Tex. App.—El Paso May 8, 2015, pet. ref'd) (not designated for publication). I likewise acknowledge we are required to give almost total deference to the trial court's determination of demeanor even when that determination is based on a video

recording. *See State v. Duran*, 396 S.W.3d 563, 571 (Tex. Crim. App. 2013). Thus, giving almost complete deference to the trial court's determination of historical facts, "especially if those are based on an assessment of credibility and demeanor," I must defer to the trial court's implicit finding that appellee's lack of understanding referred to his *Miranda* rights. *See Crain*, 315 S.W.3d at 48.

This, however, does not end the analysis. To determine whether the first confession's inadmissibility tainted the second confession, a reviewing court considers the following factors: (1) did the condition rendering the first confession inadmissible persist through later questioning; (2) how long was the break in time between the two confessions; (3) was the defendant given renewed *Miranda* warnings; (4) did defendant initiate the police interview which resulted in the later confession; and (5) "any other relevant circumstances." *Sterling v. State*, 800 S.W.2d 513, 519 (Tex. Crim. App. 1990). "Other relevant circumstances" include (6) was the defendant taken before a magistrate to be warned of his rights between confessions; (7) was there particular evidence that defendant's later confession was motivated by a desire to exculpate himself, rather than by any earlier improper influences brought to bear on him; (8) did the defendant remain in custody between the confessions; (9) did the defendant confer with counsel between confessions, or make any kind of request for counsel; and (10) was there particular evidence to suggest that defendant was motivated by "cat out of the bag" thinking—i.e., he gave the second confession when he otherwise might not have because he had already given the first one. *Id*. at 519–20.

The majority acknowledges the *Sterling* factors as "guiding principles to govern courts' analysis of the situation we have here" but then glosses over them without meaningful analysis. As detailed below, my review of the undisputed facts in light of the *Sterling* factors indicates appellee's second confession was not tainted by the first.

Notwithstanding my review of the first confession in which appellee affirmatively nodded his head when asked if he understood the *Miranda* rights he had read out loud in Spanish, but instead deferring to the trial court's implicit finding to the contrary, the record indicates a change in conditions from the first confession to the second confession.

Approximately one and a half days passed between appellee's first and second confession giving him time to eat, drink, and reflect on his situation. *See id.* at 520 (considering passage of one day between confessions and defendant's ability to eat, drink, and reflect as factors favoring second confession not tainted by first).[4] *Cf. McBride v. State*, 803 S.W.2d 741, 746 (Tex. App.—Dallas 1990, pet. dism'd) (concluding evidence showing a two-hour break between first and subsequent confession during which time defendant was unable to sleep weighed against attenuation). More importantly, the passage of time allowed any effects of drugs and alcohol to wear off that may have hindered appellee's ability to fully appreciate a voluntary waiver of his *Miranda* rights in the first interview.

The State introduced an arraignment sheet indicating appellee went before a magistrate at 7:36 p.m. on August 10, 2017, and the magistrate "in clear language informed the person arrested" of his *Miranda* rights—a fact the majority omits. Thus, appellee received *Miranda* warnings again approximately sixteen hours after his first interview and twenty-four hours before his second interview, in which he was yet again Mirandized before Detective Garcia proceeded with the second interview. Although *Miranda* warnings alone are not enough to attenuate taint, it is an important factor weighing in favor of attenuation. *See McBride*, 803 S.W.2d at 746 (noting a "fresh set of *Miranda* warnings alone are not determinative"); *see also Perkins v. State*, 779

---

[4] Although the Texas Court of Criminal Appeals has included a defendant's ability to eat between confessions as a factor favoring admissibility of a second confession, the majority insinuates that the officers' purchase of a McDonald's hamburger overpowered his ability to stay silent.

S.W.2d 918, 922 (Tex. App.—Dallas 1989, no pet.) (same).  Here, the record establishes appellee received *Miranda* warnings two additional times between his first and second interviews.

Of the first four *Sterling* factors, only the fourth weighs against attenuation because appellee did not initiate the second interview.

As for "other relevant circumstances," as noted above, appellee was taken before a magistrate and warned of his rights between confessions.  The record contains no "particular evidence" suggesting appellee was motivated by "cat out of the bag thinking."[5]  *See Griffin v. State*, 765 S.W.2d 422, 430 (Tex. Crim. App. 1989) ("The mere possibility such a 'psychological disadvantage was at work . . . absent some evidentiary corroboration is insufficient to rebut the State's otherwise adequate showing of voluntariness."). Detective Garcia's comment at the beginning of the second interview that "basically we are going to go over everything that you talked about with the other detective . . . ," without more, is no evidence that appellee was prompted by "cat out of the bag thinking."  *See Bell v. State*, 724 S.W.2d 780, 793 (Tex. Crim. App. 1986) (observing that "[t]he workings of the human mind are too complex to infer such a motivation without any objective evidence thereof").[6]   The majority emphasizes that nothing in the second video demonstrates appellee was *not* motivated at least in part by "cat out of the bag thinking." This approach contradicts *Sterling*'s directive that when considering the "cat out of the bag

---

[5] The "cat out of the bag" theory stems from Justice Jackson's opinion in *United States v. Bayer*, 331 U.S. 532, 540–41 (1947):

> [A]fter an accused has once let the cat out of the bag by confessing, no matter what the inducement, he is never thereafter free of the psychological and practical disadvantages of having confessed. He can never get the cat back in the bag. The secret is out for good. In such a sense, a later confession may always be looked upon as fruit of the first. But this Court has never gone so far as to hold that making a confession under circumstances which preclude its use, perpetually disables the confessor from making a usable one after those conditions have been removed.

Here, the arrest warrant indicates officers engaged in a car chase with appellee, who was a passenger.  Inside the vehicle, officers recovered two cell phones and a wallet with one victim's identification and credit cards.  This "particular evidence" supports the theory appellee was motivated to engage in a second interview not because of some psychological influence from his previous confession but because he knew officers caught him with stolen property fleeing the scene near the robberies.

[6] At 1:28:14 of the 1:30:14 interview, appellee stated, "If I got out I can work and help pay, 'cause [sic] bro, like I said to the other officer, if I can get out I will pay for them."  Given that this isolated statement referring to the first interview occurred at the end of an hour and a half long interview, I cannot infer the statement amounts to "particular evidence" supporting "cat out of the bag" motivation.

–10–

thinking" factor, the reviewing court considers whether the record includes particular evidence of a defendant's motivation to give a second confession. 800 S.W.2d at 520. The *absence* of such particular evidence cannot support the majority's conclusion that "cat out of the bag thinking" was an "acceptable part" of the court's reasoning for granting the motion to suppress. Moreover, this Court has recognized that the "cat out of the bag" theory has limited value with respect to adult offenders. *B__A__G__ v. State*, 715 S.W.2d 790, 793 (Tex. App.—Dallas 1986), *rev'd on other grounds by Griffin*, 765 S.W.2d at 430.

Finally, there is some "particular evidence" appellee's second confession was motivated by a desire to exculpate himself because he included self-serving statements. For example, when Detective Garcia asked appellee if he fired a gun, appellee said, "I don't remember it real good, but I was there but I wasn't shooting nobody." When describing the incident in which appellee said the white truck tried to "roll over" him, he told Detective Garcia "the other guy" told him, "Hey, shoot the car and I was like drunk and everything and I shoot. . . . I didn't mean to do that but the other guy told me and I was like drunk." *See, e.g., Sterling*, 800 S.W.2d at 520 (second confession may have been motivated by desire to exculpate himself when he said, "I was just going to rob her" and "I wasn't intended to kill her or anything like that" [sic]).

That appellee remained in custody and did not consult with counsel militates against admissibility, but these two factors do not outweigh the strong indications that appellee voluntarily gave his second confession. Considering the totality of the circumstances and weighing the *Sterling* factors, I would conclude any implied taint from the first confession was attenuated prior to appellee's second confession.[7]

---

[7] It is noteworthy that in *Sterling*, the defendant had an IQ of 69 yet the court of criminal appeals, applying the factors, concluded any taint from a first interview was attenuated from a subsequent interview. *Sterling*, 800 S.W.2d at 518, 520.

The majority indicates it is "not our job" to reweigh each *Sterling* factor. This is exactly what the court of criminal appeals requires when a criminal defendant complains a later confession is tainted by a prior one. Such review of the evidence is not treating the trial court as a "try out" or functioning as an "instant replay booth."[8] This Court has followed *Sterling*, and the majority fails to explain why we should not consider each factor in a totality of the circumstances review. *See McBride*, 803 S.W.2d at 745–46.[9] I recognize few cases have considered the *Sterling* factors over the past twenty-five years, and those cases involve a defendant's appeal of the trial court denying a motion to suppress rather than a State's appeal. However, to agree with the majority eviscerates appellate review for the State when a trial court concludes the taint from a first confession is not sufficiently attenuated and suppresses the second confession. If the majority is correct and the State is not entitled to a meaningful review of the *Sterling* factors, then I respectfully encourage the court of criminal appeals to clarify the standard.

The trial court has broad discretion in its rulings, but its rulings are not unfettered. Here, any alleged taint from appellee's first confession was removed before his second confession; therefore, the State proved, by a preponderance of the evidence, that appellee knowingly, intelligently, and voluntarily waived his *Miranda* rights. *Joseph*, 309 S.W.3d at 24 (State must prove waiver by a preponderance of the evidence). Accordingly, the trial court abused its discretion by granting appellee's motion to suppress.

### Sixth Amendment Right to Counsel

Because I conclude the trial court could not have suppressed appellee's second confession because it was involuntary, I must now determine whether the trial court could have suppressed

---

[8] *See* majority opinion page 2 and footnote 11.

[9] Other courts of appeals have likewise engaged in such analysis. *See, e.g., Brown v. State*, No. 07-03-00347-CR, 2005 WL 1742984, at *5 (Tex. App.—Amarillo July 25, 2005, no pet.) (mem. op., not designated for publication); *Ikes v. State*, No. 01-96-01540-CR, 1998 WL 734014, at *3 (Tex. App.—Houston [1st Dist.] Oct. 22, 1998, pet. ref'd) (mem. op., not designated for publication).

the second confession based on appellee's Sixth Amendment right to counsel. *See Armendariz*, 123 S.W.3d at 404 (reviewing court must uphold trial court's ruling if supported by the record and correct under any theory of law applicable to the case).

During the suppression hearing, appellee argued his Sixth Amendment right to counsel attached once he requested an attorney during his arraignment; therefore, the subsequent police-initiated interview without a lawyer violated his constitutional right. He relied on *Holloway v. State*, 780 S.W.2d 787 (Tex. Crim. App. 1989), in which the court held a defendant's unilateral wavier of his Sixth Amendment right to counsel during interrogation, without his defense attorney, was invalid even if he received *Miranda* warnings. *Id*. ("Only through notice to defense counsel may authorities initiate the interrogation of an indicted and represented defendant."). The State argued, as it does on appeal, that *Holloway* is no longer the applicable law after the United States Supreme Court's decision in *Montejo v. Louisiana*, 556 U.S. 778 (2009), which the Texas Court of Criminal Appeals applied in *Pecina v. State*, 361 S.W.3d 68 (Tex. Crim. App. 2012). I agree.

Before the United States Supreme Court's decision in *Montejo*, a distinction was drawn between the waiver of a Fifth Amendment right to interrogation counsel and a Sixth Amendment right to trial counsel. *See Pecina*, 361 S.W.3d at 74–78. Under the prior law, when an attorney-client relationship was established after a defendant's Sixth Amendment right to counsel attached, the police could initiate an interrogation only through notice to defense counsel. *See Holloway*, 780 S.W.2d at 794. After *Montejo*, however, both the Fifth and Sixth Amendment rights to counsel during custodial interrogation are "waived in exactly the same manner." *Pecina*, 361 S.W.3d at 70. Therefore, when law enforcement officers approach a defendant and provide him with *Miranda* warnings, the defendant must invoke his Sixth Amendment right to counsel at that time. *Id*. at 78. As the *Montejo* court concluded:

> Under *Miranda*'s prophylactic protection of the right against compelled self-incrimination, any suspect subject to custodial

> interrogation has the right to have a lawyer present if he so requests, and to be advised of that right. . . . Under the *Miranda-Edwards-Minnick* line of cases (which is not in doubt), a defendant who does not want to speak to the police without counsel present need only say as much when he is first approached and given the *Miranda* warnings. At that point, not only must the immediate contact end, but "badgering" by later requests is prohibited. If that regime suffices to protect the integrity of "a suspect's voluntary choice not to speak outside his lawyer's presence" before his arraignment [citations omitted], it is hard to see why it would not also suffice to protect that same choice after arraignment, when Sixth Amendment rights have attached.

*Montejo*, 556 U.S. at 794–95.

Here, the record is clear appellee requested an attorney during magistration; however, this invocation of his right to counsel "says nothing about his possible invocation of his right to counsel during later police-initiated custodial interrogation." *Pecina*, 361 S.W.3d at 78. Rather, if the evidence establishes appellee invoked his right to counsel after being read his *Miranda* warnings in the second interview, then the trial court's ruling could still be upheld because appellee's statements would have been taken in violation of his right to counsel. *Id*.; *see also State v. Reising*, No. 04-16-00794-CR, 2017 WL 4518287, at *2–3 (Tex. App.—San Antonio Oct. 11, 2017, no pet.) (mem. op., not designated for publication) (applying *Pecina* and reversing trial court's order granting motion to suppress when record did not support an unequivocal request for counsel). The record does not support such a conclusion. Detective Garcia read appellee his *Miranda* warnings at the beginning of the interview. "That [was] the time and place to either invoke or waive the right to counsel for purposes of police questioning." *Pecina*, 361 S.W.3d at 78. Appellee did not invoke his right to counsel but instead said he understood his rights and was willing to talk. Thus, he waived his Sixth Amendment right to trial counsel. Accordingly, to the extent the trial court suppressed appellee's second confession based on a Sixth Amendment right to counsel violation, it abused its discretion.

–14–

## Conclusion

Because the trial court's order cannot be upheld under any law applicable to the case, I would reverse the trial court's order suppressing appellee's second confession and remand for further proceedings.


/David L. Bridges/
DAVID L. BRIDGES
JUSTICE

180870DF.P05